UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JULIA BETANCES,

         **Plaintiff,**

         **-against-**

THE NEW YORK CITY HOUSING AUTHORITY,
and TINO HERNANDEZ, as Chairman of the
New York City Housing Authority,

         **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Civ. No. 08-4794 (RMB)

DECLARATION OF
DONNA M. MURPHY
IN OPPOSITION TO
PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION

DONNA M. MURPHY, pursuant to 28 U.S.C. §1746 declares under penalty of perjury that the following is true and correct:

1. I am an attorney at law admitted to practice before this Court. I am of counsel to Ricardo Elias Morales, General Counsel for defendants New York City Housing Authority ("NYCHA") and Tino Hernandez. As such, I am fully familiar with all of the proceedings in this case.

2. I submit this declaration in opposition to plaintiff's motion for a preliminary injunction directing NYCHA not to rent the two-bedroom apartment located at 290 East 4th Street, Apt. #6C, New York, New York in NYCHA's Lower East Side Consolidated Houses because plaintiff alleges that she requires that apartment as a reasonable accommodation of her niece's son's mobility impairment.

## NYCHA's Fair Housing Non-Discrimination Policy

3. NYCHA's fair housing non-discrimination policy prohibits discrimination in the selection of families and in the provision of services on the basis of, <u>inter alia</u>, disability. Attached as Exhibit A is a true copy of NYCHA's Fair Housing Non-Discrimination Policy.

**NYCHA's Tenant Selection and Assignment Plan**

4. NYCHA places tenants in public housing apartments is according to its Tenant Selection and Assignment Plan ("TSAP"), which has been approved by the U.S. Department of Housing and Urban Development ("HUD") as meeting all non-discrimination requirements. Attached hereto as Exhibit B is a true copy of the TSAP, approved by HUD on January 12, 2007. As reflected in the attachment, TSAP sets forth prescribed reasons for a transfer. To apply for a transfer from one apartment or development to another, a tenant must submit a written request on a transfer request form to the manager of the development at which the tenant resides, setting forth the reason for the transfer request. If the project manager approves the request, he or she assigns a priority code to it and forwards it to the Field Liaison Division ("FLD"). See Exhibit A, TSAP, p.18.

5. Attached hereto as Exhibit C is a true copy of GM-3595A Revised, "TSAP: Revised Transfer Procedure," ("GM-3595A"). As set forth in GM-3595A, a manager is to disapprove a tenant request to transfer where the family has an unsatisfactory record of tenancy, including being "under legal action for non-payment of rent or meets criteria for chronic rent delinquency in the payment of rent." See Exhibit C, GM-3595A, p.2.

6. Grounds for a transfer under the TSAP include extreme under-occupancy of an apartment according to NYCHA's occupancy standards. See Exhibit A, TSAP, p.20-21. Tenants living in extremely underoccupied apartments may select any project whether or not it appears on the Guide for Anticipated Vacancies. See Exhibit A, TSAP, p.20-21; see also GM 3595D Revised, TSAP-Revised Transfer Guide and Occupancy Standards Charts ("GM 3595D"), Appendix A, p.2. Attached as Exhibit D is a true copy of GM 3595D.

7. NYCHA electronically selects the next family for an apartment according to TSAP criteria. A tenant's ability to transfer under TSAP is affected by a number of factors, including the

number of available apartments at the development requested, the number of families on the waiting list for apartments of the requested size at that development and the priority code assigned to each public housing application and transfer request.

**Plaintiff's Rejection of Reasonable Accommodation**

8.  Plaintiff and Algenis Payamps, plaintiff's niece's son of whom she has legal custody (hereinafter "plaintiff's son") have been residing temporarily at an apartment at Armstrong Houses (441 Gates Avenue Apt. #4C, Brooklyn, New York) while the apartment leased to plaintiff in Armstrong Houses undergoes repair.  As set forth in the Declaration of Michael Robinson, dated June 3, 2008 ("Robinson Declaration"), Plaintiff did not claim this temporary apartment failed to accommodate the needs of her son until after she was denied permission to transfer to an apartment in NYCHA's Lower East Side Consolidated due to her outstanding rent arrears.  Plaintiff first claimed her son needed a reasonable accommodation through her counsel in this action.

9.  As detailed in the Robinson Declaration, in light of plaintiff's contention that her son needed to be in an elevator building or in a first floor apartment, on Friday, May 30, 2008, Armstrong Houses management office staff contacted plaintiff to inquire into whether she was interested in transferring to an apartment on the 12th floor of an elevator building at 387 Lafayette Avenue, Brooklyn, New York in NYCHA's Lafayette Gardens, which is only six blocks from Armstrong Houses.  Plaintiff indicated that she was interested and would come to the office on Tuesday morning (Monday being the Memorial Day holiday) to look at the apartment.  Plaintiff did not appear on Tuesday morning to look at the apartment.

10.  At the court conference in this matter on May 27, 2008, I informed Linda Holmes, Esq., in the presence of other counsel for plaintiff, that plaintiff had not mentioned any need for accommodation of her son's mobility impairment when she viewed and accepted the temporary

apartment at Armstrong Houses, but that NYCHA had located an apartment in an elevator building at Lafayette Gardens and was continuing to search for other apartments which were either on the first floor or in elevator buildings. I informed Ms. Holmes that NYCHA was prepared to accommodate plaintiff's son and inquired whether plaintiff had any interest in a temporary transfer to the Lafayette Gardens apartment or any other first floor or elevator apartment. This offer was not conditioned upon plaintiff's waiver or settlement of any of her claims. After consulting with her client, Ms. Holmes informed me that plaintiff was not interested in any of the apartments because she was "not interested in moving twice."

Dated: New York, New York
      June 3, 2008

                                        Donna M. Murphy

# EXHIBIT A



# NEW YORK CITY HOUSING AUTHORITY
## FAIR HOUSING NON-DISCRIMINATION POLICY

It is the policy of the New York City Housing Authority to provide equal housing opportunities for all qualified applicants and residents. In the selection of families and in the provision of services, there shall be no discrimination against any person on the grounds of race, color, religion, national origin, sex, sexual orientation, age, familial status, marital status, partnership status, military status, disability, lawful occupation, alienage or citizenship status, or on the grounds that a person is a victim of domestic violence, dating violence, or stalking. This policy also prohibits retaliation.

This policy is in accordance with Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, the Fair Housing Act of 1968, as amended by the Fair Housing Amendment Act of 1988, the Americans with Disabilities Act of 1990, and the New York State and City Human Rights Laws.

Any resident or applicant who wishes to report housing discrimination or retaliation MAY FILE A DISCRIMINATION COMPLAINT (NYCHA 036.024) by contacting the Department of Equal Opportunity from 8:30 AM to 5:00 PM, Monday through Friday or their development management office between 8:30 AM to 4:30 PM:

New York City Housing Authority
Department of Equal Opportunity
250 Broadway, 27th floor
New York, NY 10007
Telephone (212) 306-4468
Fax: (212) 306-4439
TTY: (212) 306-4845

Or by contacting any of the following federal, state or city human rights agencies listed below:

New York City Commission on Human Rights
40 Rector Street, 9th floor
New York, NY 10006
(212) 306-7500

New York State Division of Human Rights
20 Exchange Place, 2nd floor
New York, New York 10005
(212) 480-2522

United States Department of Housing and Urban Development
Office of Fair Housing and Equal Opportunity
26 Federal Plaza, Room 3532
New York, New York 10278
(212) 264-1290 Extension 7534



EQUAL HOUSING
OPPORTUNITY



# NEW YORK CITY HOUSING AUTHORITY
## MESURES POUR EMPECHER LA
## DISCRIMINATION DANS LE LOGEMENT

Il est d'usage à "New York City Housing Authority" de donner une chance égale à tous ceux qui sont éligibles pour le l'habitation publique ainsi qu'à ses locataires. Il ne fait pas de discrimination dans la sélection de familles et dans les services rendus à quiconque en ce qui trait à la race, la couleur de peau, religion, lieu de naissance, sexe, préférence sexuelle, âge, statut familial, statut marital, genre d'union, statut militaire, inÞrmité, occupation licite, statut de citoyenneté, ou bien dans le cas d'une personne victime de violence domestique, qui a une relation romantique avec une personne violente ou est poursuivie par telle personne. Ces mesures ont été mises en place pour empêcher des représailles.

Ces mesures sont en accord avec Titre VI (Title VI) de la Loi de 1964 sur les Droits Humains, Article 504 de la loi de 1973 sur la Réhabilitation, la Loi de 1968 sur l'egalité dans le Logement, comme elle a été modiÞée par l'Amendement à La Loi de 1988 sur l'Egalité dans le Logement, la Loi de 1990 pour les Américains inÞrmés, et les Lois sur les Droits Humains de l'Etat et de la Ville de New York.

Si un locataire ou un demandeur veut rapporter un cas de discrimination ou de représailles en ce qui a trait au logement, IL PEUT PORTER PLAINTE (NYCHA 036.024) en contactant le Bureau du Département de "Chance Egalë" (Equal Opportunity) entre 8:30 AM et 5:00 PM du Lundi au Vendredi, ou le "Département de Gestion du Logement" (Management) entre 8 :30 AM et 4:30 PM:

New York City Housing Authority
Department of Equal Opportunity
250 Broadway, 27th Floor
New York, NY 10007
Telephone: (212) 306-4468
Fax: (212) 306-4439
TTY: (212) 306-4845

Ou bien il peut entrer en contact avec l'agence fédérale, des droits humains, ou celle de l'Etat ou de la Ville de New York. Leur adresse et numéro de téléphone sont ci-dessous:

New York City Commission on Human Rights
40 Rector Street, 9th Floor
New York, NY 10006
(212) 306-7500

New York State Division of Human Rights
20 Exchange Place, 2nd Floor
New York, NY 10005
(212) 480-2522

United States Department of Housing and Urban Development
OfÞce of Fair Housing and Equal Opportunity
26 Federal Plaza, Room 3532
New York, NY 10278
(212) 264-1290 Extension 7534



NYCHA 036.033 (Rev. 4/07)
French



纽约市房屋局
没有歧视的房屋平等政策

纽约市房管局提供平等房屋机会给所有合资格的申请人或居民。在选择入住家庭及提供服务时，本局将不歧视任何人仕之种族、肤色、宗教信仰、国籍、性别、性向、年龄、家庭状况、婚姻状况、同居关系状况、参军、伤残、合法职业、非公民或公民身份、或家庭暴力受害者、约会暴力受害者或被恶意缠绕者。这项政策也禁止报复。

这政策是根据一九六四年民权法例第六条，一九七三年恢复法例第504章，一九六八年房屋平等法例，继而修订为一九八八年房屋平等法例，一九九0年美国伤残法例及纽约卅/市人权法案。

如居民或申请人要投诉任何歧视或报复，可呈交投诉表（NYCHA 036.024）并与机会平等部联络，时间为周一至五，从上午八时半至下午五时，或联络屋邨管理处办公室，时间为周一至五，从上午八时半至下午四时半。

纽约市房屋局
机会平等部
250 Broadway, 27th floor
New York, NY 10007
电话：（212）306-4468
传真：（212）306-4439
TTY: (212) 306-4845

也可与下述联邦，卅或市政府的人权部联络：

纽约市人权委员会
40 Rector Street, 9th floor
New York, NY 10006
(212) 306-7500

纽约卅人权部
20 Exchange Place, 2nd floor
New York, New York 10005
(212) 480-2522

美国房屋及城市发展局
属下房屋平等部
26 Federal Plaza, Room 3532
New York, New York 10278
(212) 264-1290 内线: 7534


EQUAL HOUSING
OPPORTUNITY



# NEW YORK CITY HOUSING AUTHORITY
## LWA KI KONDANE DISKRIMINASYON NAN LWAYE KAY

Lwa lan "New York City Housing Authority" vlé pou trété tout moun kap chaché kay nan minli ouswa ki rété lan kay li mim jan. Li pa dwe fè diskriminasyon nan chwa lokatè, li pa dwée fè sèvis daprè ras, koulè, relijyon, kote ou moun fèt, si ou sè gason ou Þ, ak ki moun ou gen rapò seksyel, laj ou, sa fammi yé, swa ou marié, swa ou pa marié, sèvis militè wou, si ou andikapé, ki travay ou ap fè, ki koté ou soti, Ou si mounnan sé ou viktim de violans domestik, ak soti avek ou moun ki violan ou bien mounsaa ki violan ap suivli. Lwa sa pa pèmèt pou moun fè ou lot moun mal poutèt lap chaché ou ki rété nan ou kay.

Pwogram sa an akò ak TitVI (Title VI) Kontra Sou Dwa Sivil ki té voté nan 1964, (Civil Right Act) sekskyon 504, Kontra sou Reabilitasyon ki te vote lan 1973, (Section 504 of the Rehabilitation Act); Lwa ki vlé ke pou moun kinyin min dwa (Fair Housing Act), Lwa Sou kay pou tout moun nan 1968, epi ki te parèt anko nan 1988 sou lot non, Kontra Pou Amerikin Ki Andicapé ke yo te vote nan 1990 (American with Disabilities Act) epi Dwa Pou Tout Moune KapViv Nan Nou Yòk (New York State and City Human Rights Laws).

Si ou moun kap chaché kay, ouswa ki rété nan kay ké NYCHA okipé sé ou viktim anba diskriminasyon se dwal poul rapòte li (Ou ka rampli NYCHA 036.024). Rélé biwo ki vlé dwa pou tout moun (Equal Opportunity): Pòt li ouvri de 8:30 di matin, jiska 5:30 di swa, de Lindi jiska Vandredi, ou ka rélé biwo ki okipé kay koté ou rété a pati 8:30 di matin, jiska 4:30 di swa.

Min adrès ak telefòn biwo Equal Opportunity:
New York City Housing Authority
Department of Equal Opportunity
250 Broadway, 27th Floor
New York, NY 10007
Telephone: (212) 306-4468
Fax: (212) 306-4439
TTY: (212) 306-4845

Ou ka rélé tout koté sa yo si ou sé viktim diskriminasyon:

New York City Commission on Human Rights
40 Rector Street, 9th Floor
New York, NY 10006
(212) 306-7500

New York State Division of Human Rights
20 Exchange Place, 2nd Floor
New York, NY 10005
(212) 480-2522

United States Department of Housing and Urban Development
OfÞce of Fair Housing and Equal Opportunity
26 Federal Plaza, Room 3532
New York, NY 10278
(212) 264-1290 Extension 7534

NYCHA 036.033 (Rev. 4/07)
Haitian Créole





### ГОРОДСКОЕ ЖИЛИЩНОЕ УПРАВЛЕНИЕ Г. НЬЮ-ЙОРКА (NYCHA)

## ПРИНЦИП РАВНОПРАВИЯ И НЕДОПУЩЕНИЯ ДИСКРИМИНАЦИИ

Основным правилом Городского Жилуправления является обеспечение равных прав для всех стоящих в очереди на квартиру и жильцов, проживающих в государственных квартирах. При распределении жилья и предоставлении услуг не должно быть дискриминации по отношению к любому человеку независимо от расы, цвета кожи, религии, национальности, пола, половой ориентации, семейного положения, состава семьи, кто является партнером проживающим с жильцом в этой квартире, военной обязанности, инвалидности, профессии или наличия гражданства, или на основании того, что человек является жертвой домашнего или других видов насилия, или жертвой преследования. Это правило также запрещает преследование за критику.

Эта политика соответствует Главе VI Постановления о Правах Человека 1964 года, Section 504 of the Rehabilitation Act of 1973, Постановлению о Равных Правах Человека 1968 года, Дополнению к Постановлению о Равных Правах Человека 1988 года, Постановлению об Инвалидах в Америке 1990 года, и Нью-Йорскими штатскими и городскими Законами о Правах Человека.

Любой человек, проживающий в домах NYCHA или стоящий в очереди для получения такого жилья и желающий заявить о фактах жилищной дискриминации или преследования за критику, должен заполнить ДИСКРИМИНАЦИОННУЮ ЖАЛОБУ (NYCHA 036.024). Чтобы получить эту форму, Вам следует обратиться в Отдел Равных Возможностей (Department of Equal Opportunity) с понедельника по пятницу с 8:30 до 17:00 или в Ваш менеджмент оффис с 8:30 до 16:30:

New York City Housing Authority
Department of Equal Opportunity
250 Broadway, 27th Floor
New York, NY 10007
Telephone: (212) 306-4468
Fax: (212) 306-4439
TTY: (212) 306-4845

Вы также можете обратиться в федеральную, штатскую или городскую организации по правам человека:

New York City Commission on Human Rights
40 Rector Street, 9th Floor
New York, NY 10006
(212) 306-7500

New York State Division of Human Rights
20 Exchange Place, 2nd Floor
New York, NY 10005
(212) 480-2522

United States Department of Housing and Urban Development
Ofьce of Fair Housing and Equal Opportunity
26 Federal Plaza, Room 3532
New York, NY 10278
(212) 264 -1290 Extension 7534





# 뉴 욕 시 주 택 청
## 무차별 내우 공정 주택 정책

모든 유자격 신청자와 임주자에게 가장한 주택 기회를 제공하는 것은 뉴욕시 주택청의 정책 입니다. 가구를 선택하고 서비스를 제공함에 있어서 인종, 피부색, 종교, 출신국, 성별, 성적 기호, 나이, 가족 상태, 결혼 상태, 동반자 상태, 군복무 상태, 신체 장구, 합법적 직업, 외국 인임이나 미국 시민임 또는 가정폭력, 연인폭력이나 스토킹(어떤 사람에게 집착하여 끈질기 게 따라 다니는 짓) 피해자라는 이유에 의해 아무도 차별 대우를 받지 않을 것입니다. 또한 이 정책은 보복은 금지하고 있습니다.

이 정책은 1964년의 시민 권리법 제 6조, 1973년의 회복법 제 504항, 1968년의 공정 주택법, 1988년의 공정 주택법 수정조항, 1990년의 지체 분류 비국인법, 그리고 뉴욕주의 시의 인권 법에 따랐습니다.

주택 차별대우나 보복에 대해 신고하기를 원하는 입주자나 신청자는 Department of Equal Opportunity에 월요일부터 금요일까지, 오전 8:30부터 오후 5:00까지, 또는 개발 관리 사무소 에 오전 8:30부터 오후 4:30까지 접촉하여 차별 대우 불평 양식(NYCHA 036.024)을 접수시 킬 수 있습니다.

New York City Housing Authority
Department of Equal Opportunity
250 Broadway, 27th Floor
New York, NY 10007
Téléphone : (212) 306- 4468
Fax : (212) 306-4439
TTY: (212) 306-4845

보는 다음에 열거된 외방 또 또는 시의 인권 기관에 접촉하실 수 있습니다

New York City Commission on Human Rights
40 Rector Street, 9th Floor
New York, NY 10006
(212) 306-7500

New York State Division of Human Rights
20 Exchange Place, 2nd Floor
New York, NY 10005
(212) 480-2522

United States Department of Housing and Urban Development
Office of Fair Housing and Equal Opportunity
26 Federal Plaza, Room 3532
New York, NY 10278
(212) 264-1290 Extension 7534


EQUAL HOUSING
OPPORTUNITY



# AUTORIDAD DE VIVIENDA DE LA CIUDAD DE NUEVA YORK
## POLITICA EN CONTRA DE LA DISCRIMINACIÓN EN LA VIVIENDA EQUITATIVA

La práctica y política de la Autoridad de Vivienda de la Ciudad de Nueva York (siglas en Inglés, "NYCHA") es de proveerle igualdad de oportunidades en la vivienda a todos sus residentes y a solicitantes que cualifiquen. En la selección de familias y en la provisión de servicios no existirá discriminación en contra de ninguna persona basada en su raza, color, religión, nacionalidad, sexo, orientación sexual, edad, posición social de la familia, estado civil, estado de convivencia doméstica, estado de servicio militar, impedimento físico o mental, trabajo u ocupación; y condición de ciudadano o extranjero o si la persona es víctima de violencia doméstica, está es una relación donde es víctima de violencia o es acosado . Esta práctica y política prohibe además la represalia.

Esta política está en conformidad con el Título VI de la Ley de los Derechos Civiles de 1964, la Sección 504 de la Ley de Rehabilitación de 1973; la Ley de Viviendas Equitativas de 1968, enmendada por la Ley de Enmienda en la Vivienda Equitativa de 1988; la Ley para Americanos con Impedimentos de 1990; y las Leyes de los Derechos Humanos de la Ciudad y del Estado de Nueva York.

Cualquier residente o solicitante que desea reportar un incidente de discriminación o represalia PUEDE RADICAR UNA QUEJA POR DISCRIMINACIÓN, completando el formulario 036.024 de NYCHA y poniéndose en contacto con el Departamento de Igualdad de Oportunidades, de lunes a viernes, de 8:30 AM a 5:00 PM, o con la oficina de administración de su residencial entre las 8:30 AM y 4:30 PM:

Autoridad de Vivienda de la Ciudad de Nueva York
Departamento de Igualdad de Oportunidades
250 Broadway, Piso 27
Nueva York, NY 10007
Teléfono: (212) 306-4468
Fax: (212) 306-4439
TTY: (212) 306-4845

O comunicándose con cualquiera de las agencias de derechos humanos, federales, estatales o municipales, indicadas abajo:

Comisión de Derechos Humanos de la Ciudad de Nueva York
40 Rector Street, Piso 9
Nueva York, NY 10006
(212) 306-7500

División de Derechos Humanos del Estado de Nueva York
20 Exchange Place, 2do Piso
Nueva York, NY 10005
(212) 480-2522

Departamento de Vivienda y Desarrollo Urbano de los Estados Unidos
Oficina de la Vivienda Equitativa y de Igualdad de Oportunidades
26 Federal Plaza, Sala 3532
Nueva York, NY 10278
(212) 264-1290, extensión 7534

NYCHA 036.033 (Rev. 4/07)
Spanish



# EXHIBIT B

## The New York City Housing Authority's
## Tenant Selection and Assignment Plan

### (Approved by HUD January 12, 2007)

I.  <u>INTRODUCTION</u>

The New York City Housing Authority has adopted this Tenant Selection & Assignment Plan (the "TSAP" or "Plan") to assure that it receives and processes applications for conventional public housing efficiently and in accordance with the laws.

II.  <u>THE APPLICATION</u>

To be considered for conventional public housing each applicant must complete the Housing Authority's printed application. Applicants will be asked to select a first and second borough in which they wish to live, but may not request that their application be assigned to a particular project, defined as any conventional public housing building or group of buildings at which apartments are assigned from a single pool of certified applicants. Applicants who enter a project name in the space designated for the borough selections shall be deemed to have selected the borough in which the project is located. Applicants who fail to choose a borough shall be deemed to have chosen their borough of residence.

Upon receipt, each application shall be date and time stamped. Applications may be received and stamped at the offices of the Applications and Tenancy Administration Department ("ATAD"). Applications will then be reviewed and assigned priority codes, and

-1-

the information on the applications and their priorities will be entered into the Housing Authority's computer system. Information contained in applications assigned to priority codes N0, N1, N2 and N3 will be entered into the computer system in an expedited manner by contrast with applications in the other codes. The application shall be filed by the applicant's Social Security number.

Applicants may simultaneously apply for conventional public housing and Section 8 housing and applications to both programs shall be processed concurrently.

## III. <u>PRIORITIES FOR APPLICANTS</u>

### A.  <u>Method of Assigning Priorities</u>

In accordance with federal regulations, the Housing Authority has adopted priorities by which it ranks each applicant based upon information in the application. If an applicant qualifies for both a Working Family Preference priority and a Need Based Preference priority (discussed below), the Housing Authority shall assign both priorities to the application, and the applicant's ultimate priority shall be that one which first gains the applicant an eligibility interview.

Upon entry of the application information onto the computer system, the Housing Authority shall notify the applicant of the priority or priorities assigned to the application and the procedures by which the applicant may obtain review of the decision. At any stage prior to rental, the Housing Authority may change the priority

code if it is notified that an applicant's priority qualifications have changed.  If the priority code is changed, the applicant will be so notified.

**B.    The Priority Codes**

The priority codes adopted by the Housing Authority are:

WORKING FAMILY PREFERENCES

Code W1[1]

Applicants in Income Tier III.

Code W2[1]

Applicants in Income Tier II.

Code W3[1]

Applicants in Income Tier I who are also "working families."  A "working family" shall mean:  Where income is based on actual employment or if the head and spouse, or sole member, are age 62 or older or are receiving social security disability, supplemental security income disability benefits, or any other payments based on an individual's inability to work.

For the purposes of this Plan, "Income Tier" shall be defined as the income level of each applicant which, to the extent permitted by federal law and regulations, the Housing Authority uses to advance its goal of economic integration and of avoiding concentrations of low-income families in any one or all of the Housing Authority projects.

The Housing Authority divides applicants into three Income Tiers:  Applicants in Tier I have family incomes ranging from none up to 30% of area median income; applicants in Tier II have family incomes ranging from 31% to 50% of area median income; and applicants in Tier III have family incomes ranging from 51% to 80% of the area median income.  The dollar amounts

---

[1]    Due to a federal injunction, applicants selected for interview based on this priority cannot be certified to the following projects:  Berry, Cassidy-Lafayette, Forest Hills, Haber, Independence, Middletown, New Lane, Nostrand, Robbins, South Beach, Taylor-Wythe, Todt Hill, Williams.

for each tier vary by family size and are revised periodically
to reflect economic data and income levels for admission to
public housing as established by federal guidelines.

Applicants in Tier III are not eligible for Section 8 projects
or for City/State Section 8 voucher vacancies.

NEED BASED PREFERENCES

Code N0

♦   Applicants who are referred to the Housing Authority by
    the New York City Department of Homeless Services ("DHS"),
    or by the HIV/AIDS Services Administration ("HASA"), or by
    the New York City Department of Housing Preservation and
    Development ("HPD"), or by the Administration for
    Children's Services ("ACS"), pursuant to an agreement with
    the Housing Authority.

♦   Applicants about to be discharged from a hospital operated
    by the New York City Health and Hospitals Corporation
    ("HHC"), who would become homeless upon discharge and who
    are referred to the Housing Authority by HHC.  Homeless
    applicants shall be defined as in 24 C.F.R. § 5.425(b)(2)
    (4-1-98 Edition).

♦   Applicants with children in foster care whose only barrier
    to reunification is housing, and who are not eligible for
    rental assistance through the City's Housing Stability
    Plus Program.  These families must be referred by ACS.

Code N1

♦   Applicants who have suffered serious or repeated abuse
    from a family member or person with whom they have had, or
    continue to have, an intimate relationship, and as a
    result of that abuse the victim suffered actual physical
    injury or the threat of injury, and the victim: (a) will
    continue to suffer abuse if (s)he continues to live in the
    current residence, or (b) has left the residence due to
    the abuse and is not living in standard permanent
    replacement housing.

<u>Code N2</u>

♦     Applicants with a family member cooperating in a criminal investigation/prosecution, where a member of the household has been threatened by a defendant in that investigation/prosecution, or by a person associated with a defendant.  To qualify for this category, the prosecutorial or police agency involved in the case must certify to the Housing Authority that:

    a.    the threat was made and was in retaliation for past or present cooperation with a prosecutorial or police agency;

    b.    the threat poses a serious risk to a member of the household; and

    c.    it is likely that the defendant or the defendant's associates know the family's current home address.

<u>Code N3</u>

♦     Applicants living in housing declared uninhabitable by HPD or another government agency, or already displaced due to such a government order and not living in standard permanent replacement housing.

♦     Applicants about to be displaced by a government order from a site to be used for a public housing project or other public improvement.

<u>Code N4</u>[2]

All other "working families" who are involuntarily displaced, living in substandard housing, or paying more than 50% of family income for rent.

<u>Code N5</u>

All other families who are involuntarily displaced, living in substandard housing, or paying more than 50% of family income for rent.

---

[2]  See footnote 1, page 3 above.

-5-

Code N8

♦  Applicants who do not qualify for a Need Based preference
   and are not now renting either a public housing or a
   Section 8 apartment.

♦  Applicants who do not live or work or have a commitment
   for a job in New York City.

Code N9

Applicants who do not qualify for a Need Based preference and
are now renting either a public housing or a Section 8
apartment.

C.  **Priority Codes, Working Family Preferences and Need Based
    Preferences**

Applicants in priority codes W1, W2 and W3 are entitled to the
Housing Authority's Working Family preferences.

Applicants in priority codes N0, N1, N2, N3, N4 and N5 are
entitled to the Housing Authority's Need Based preferences, defined
as  involuntarily displaced, living in substandard housing, or paying
more than 50% of family income for rent. "Involuntarily displaced" is
defined as it was in 24 C.F.R. § 5.420 (4-1-98 Edition)[3], except that
"domestic violence" is defined as in Code N1 above.  "Substandard
housing" is defined as (1) housing defined in 24 C.F.R. § 5.425 (4-1-
98 Edition)[3], or (2) "extremely overcrowded," defined as more than
twice as many people as the number of living and bedrooms (for
example, five or more people in an apartment with one living room and
one bedroom), or (3) legally doubled up and "overcrowded" in public
housing ("overcrowded" is defined as more than twice as many people

---

[3]  Families with written leases or subleases are not considered to be living
in transient facilities or temporary residences.

as the number of bedrooms, such as five people in an apartment with two bedrooms).  "Paying more than 50% of family income for rent" is defined as it was in 24 C.F.R. § 5.430 (4-1-98 Edition).

## IV.  INFORMATION AVAILABLE TO APPLICANTS

### A.    The Guide to Anticipated Vacancies

Every two weeks, ATAD will prepare a Guide to Anticipated Vacancies for Working Families ("Working Family Guide"), and a Guide to Anticipated Vacancies for Need Based Families ("Need Based Guide").  Each Guide will list all of the projects organized by borough and divided into elderly, Section 8 and general population projects listed alphabetically by full name, with street intersections.  Each Guide will list the five apartment sizes in which applicants may select the project in which they wish to live: no bedrooms, one-bedroom, two-bedrooms, three-bedrooms, and four-bedrooms.  Projects may be designated as anticipating vacancies in some, but not all, apartment sizes.

For each project not currently appearing on the Working Family Guide as anticipating vacancies, ATAD will designate the project as anticipating vacancies in a given apartment size when it has on hand fewer certified Working Family applications than it needs to fill the Working Family vacancies anticipated during the next six months.[4] Projects currently designated on the Working Family Guide will continue to be designated as anticipating vacancies until they have

---

[4]  This period may be adjusted Authority-wide at the discretion of the Director of ATAD.

enough certified Working Family applications to fill Working Family vacancies anticipated during the next nine months.[5]  ATAD shall follow the same process with the Need Based Guide.

ATAD shall determine the number of certified Working Family applications each project needs to fill anticipated Working Family vacancies for nine months and for six months by the following formula:

> For nine months:  three-quarters of the total of the preceding year's move-outs in the relevant apartment size, divided by 3, multiplied by the number of certified applicants needed to complete one rental in the relevant apartment size.  These numbers shall be based upon an analysis of all placements during the previous year.
>
> For six months:  two thirds of the nine-month total.

ATAD shall determine the number of certified Need Based applications each project needs to fill anticipated Need Based vacancies for nine months and for six months by the following formula:

> For nine months:  three-quarters of the total of the preceding year's move-outs in the relevant apartment size, divided by 3, multiplied by the number of certified applicants needed to complete one rental in the relevant apartment size.  These numbers shall be based upon an analysis of all placements during the previous year.
>
> For six months:  two thirds of the nine-month total.

ATAD shall review the data for each project once a year and adjust the factors in the formula as necessary to ensure that each

---

[5]  This period may be adjusted Authority-wide at the discretion of the Director of ATAD.

project has an appropriate number of applications to meet anticipated vacancies.

### B.  Dissemination of Information

To assure that all applicants entitled to select a project have an equal opportunity to do so, the Housing Authority shall make available to all applicants information about all its projects, such as their locations and services available within their vicinities.

## V.  QUALIFYING FOR PUBLIC HOUSING

### A.  Applicants to be Computer-Scheduled

Except as provided in Paragraph V(B), below, applicants shall be computer scheduled for eligibility interviews as follows:

First, ATAD shall (1) tabulate the number of vacancies, by apartment size, that each project anticipates within the next nine months;[6] and (2) determine the number of additional certified applicants the project needs to fill these anticipated vacancies, using computerized reports which list, by apartment size, the number of applications and transfer requests awaiting rental at the project.

Second, ATAD shall determine the number of applicants to be interviewed for vacancies anticipated in each borough based upon these monthly reports, the number of certified applications each project needs to complete one rental, the percentage of applicants summoned to interviews who appear for the interview and the percentage of applicants who complete the eligibility requirements

---

[6]  This period may be adjusted Authority-wide at the discretion of the Director of ATAD.

for public housing, as well as the number of eligibility interviewers available to conduct interviews.  Finally, a computer shall select applicants on a borough by borough basis based upon their borough of first choice, apartment size required, priority and date of application.

   **B.    Applicants To Be Manually-Scheduled**

   The following applicants may be manually-scheduled for eligibility interviews:  Applicants in priority codes N0, N1, N2, and applicants recruited pursuant to the Applications Outreach Program described in Section VIII(B) below.

   **C.    The Eligibility Interview/Project Selection**

   Each applicant must appear for, and cooperate in, an eligibility interview conducted by ATAD pursuant to procedures set forth in the Housing Applications Manual.  The manual shall be distributed to all eligibility interviewers, who shall be trained in its procedures.  All eligibility interviewers will take a cultural diversity course, to sensitize them to racial, ethnic and other issues that arise in the course of their work.  The Director of ATAD shall ensure that all eligibility interviewers are trained in the Department's procedures.

   To ensure that each eligibility interviewer is following a standard interview format, ATAD shall use an interview form to record the information elicited by the interviewer from the applicant.

-10-

At the eligibility interview, the interviewer will first note information to determine the applicant's family composition. Applicants who are permitted to choose a project shall consist of those in Codes W1, W2, W3, N4, N5, N8 and N9, whose family composition qualifies them for an apartment of four bedrooms or less.

The interviewer shall record the applicant's family composition and complete the interview. If the applicant provides all of the required information and is found eligible for public housing, applicants for apartments of four bedrooms or less shall be given the appropriate Guide and asked to select only one project (located in one of the two boroughs the applicant selected on the application) designated on the Guide as requiring applicants in the apartment size required by the applicant.

If the applicant can demonstrate "Changed Circumstances" between the application and certification dates, the applicant may select a project from a borough other than the two listed on the application. For the purposes of this Plan "Changed Circumstances," which must be demonstrated by documentation or other credible evidence, shall be limited to a job change which requires more than a ninety-minute commute from the original boroughs (or project) selected; or a medical, mental health or special education need of a family member which cannot be met anywhere except in a different borough (or project) than the one selected; or where adequate medical

or special education services are not reasonably available in the original boroughs (or project) selected.

Applicants may defer their project choice for no more than thirty days. However, they must select a project designated as anticipating vacancies in the appropriate apartment size on the original Guide given to them. Such applicants may submit their project selection by mail.

If the Housing Authority requires additional information from an applicant before it can make a final determination as to eligibility, certification may be delayed only until the additional information is provided. The additional information may be submitted by mail.

If the applicant fails to provide the additional information or fails to choose a project, or rejects all projects designated on the Guide as anticipating vacancies in the appropriate apartment size, the application shall be deemed "Dead."

For the purposes of this Plan, "Dead Application" shall be defined as an application (including a transfer request) which may no longer be acted upon because the applicant (including a transferee) has failed or refused to: (1) appear for an eligibility interview within six months of the scheduled interview date; (2) submit required additional information within six months of the date requested; (3) select a project from among those designated on the Guide as anticipating vacancies in the appropriate apartment size,

-12-

when an applicant is permitted to select from that Guide, within thirty days after being given the Guide; (4) accept two apartment offers from ATAD (for applicants who may not select projects), unless a temporary emergency prevents a move at the time of the second offer; (5) accept one apartment offer (for applicants who may select a project) from the project to which the applicant has been certified, unless a temporary emergency prevents a move at the time of the offer; (6) rent an apartment after accepting a City/State Section 8 voucher; (7) respond within forty-five days to notice from a project manager advising that an apartment is available; (8) respond within forty-five days, to a letter inquiring as to whether a certified applicant is still interested in public housing; (9) accept an offer because the applicant believes the apartment is of an inappropriate size; or (10) has informed the Housing Authority that he or she is no longer interested in public housing.[7]

An applicant whose application has been deemed dead shall receive written notification to that effect, indicating the reason for the action, and that notification shall be considered a final agency determination. Any such applicant who wishes to be considered

---

[7]  However, applicants about to be displaced by a government order from a site to be used for a public housing project or other public improvement who inform the Housing Authority that they are no longer interested in public housing shall have ninety days thereafter in which to notify the Housing Authority that they have changed their minds.  If they fail to notify the Housing Authority within ninety days, their applications shall be deemed "Dead."

for public housing must file a new application. Any new application shall be governed by its date of receipt and the applicant may not be selected for interview or certified to any project for one year after the initial application was deemed dead. However, information contained in a dead application may be used to verify information contained in subsequent applications. Dead applications shall be filed in ATAD and retained for the period required by federal regulations.

D. **Applicants Who May Not Select Projects**

1. **Emergency Applicants**

Because their need for housing is urgent, "emergency applicants" (those in priority codes N0, N1, N2 and N3) may select only the borough in which they wish to live, rather than a particular project[8] (unless they are assigned to a particular project as part of the Applications Outreach Program described in Section VIII(B) below). At their eligibility interviews, these "emergency applicants" must select one of the two boroughs listed on their application, unless they can demonstrate "Changed Circumstances" between the application and interview dates.[9] Such applicants who

---

[8]  Applicants in Code N1 and N2 will not be offered an apartment near their residence when the abuse occurred, and such applicants in Staten Island may not select Staten Island. Emergency applicants who are eligible for elderly projects may elect not to receive apartment offers from general population projects, and only from elderly projects.

[9]  "Emergency applicants" may also change their borough of choice later, up to the date of project assignment, if they can demonstrate "Changed

are found eligible for public housing shall be certified to ATAD's Field Liaison Division ("FLD").  A computer will match them to an actual vacancy in the borough selected, without regard to any preference by the applicant for a particular project in that borough.[10]

By computer, FLD shall log in all "emergency applications" received and vacancies reported in date order.  Subject to the rental plans described in Section VII below, a computer will match "emergency applicants" to vacancies based upon priority and the certification date of the application and report of a vacancy.  Each "emergency applicant" may reject one offer of an apartment without penalty.  If an "emergency applicant" rejects an offer, the applicant will maintain his or her place on the computer list and shall be offered the next appropriate vacancy, subject to the rental plans described in Section VII below.  If the second offer is rejected, the application shall be deemed "Dead" unless the applicant demonstrates that a temporary emergency prevents a move at the time of the second offer.  "Emergency applicants" shall be assigned proportionately to all of the Housing Authority's projects (except any project with minimum income requirements, City/State Section 8 voucher vacancies,

---

Circumstances."

[10]  Applicants in Code N0 who are subject to DHS sanctions may be offered an appropriate vacancy in any of the five boroughs.

-15-

and the Section 8 new construction projects), based upon the total number of apartments in each project.

## 2. Applicants for Five Bedrooms or More

Because turnover in apartments with five bedrooms or more is very low, making it difficult to anticipate vacancies, non-emergency applicants who require such apartments may select only a borough in which they wish to live, rather than a particular project (unless they are assigned to a particular project as part of the Applications Outreach Program described in Section VIII(B) below). At their eligibility interviews, such applicants must select one of the two boroughs listed on their application, unless they can demonstrate "Changed Circumstances" between the application and interview dates.[11]

The applications of such applicants who are found eligible for public housing shall be certified to FLD. A computer will match each applicant to an actual vacancy in the borough selected, without regard to any preference by the applicant for a particular project in that borough.

FLD shall maintain a computer list of such applicants organized by borough selected, apartment size, priority and date of certification. By computer, FLD shall log in all such applications

---

[11] These applicants may also change their borough of choice later, up to the date of project assignment, if they can demonstrate "Changed Circumstances."

-16-

received and vacancies reported.  Subject to the rental plans described in Section VII below, a computer will match such applicants to vacancies based upon priority and certification date of the application.  Each such applicant shall be permitted one rejection of an apartment.  If an applicant rejects an offer, the applicant shall maintain his or her place on the computer list and will be offered the next appropriate vacancy, subject to the rental plans described in Section VII below.  If the second offer is rejected, the application shall be deemed "Dead" unless the applicant demonstrates that a temporary emergency prevents a move at the time of the second offer.

### E.  Applicants for Accessible Apartments

Applicants who can document their need for an accessible apartment may either select a project or borough in the same way as other applicants, or request an accessible apartment.

Those who select in the same way as other applicants retain their rights to have a reasonable accommodation made for their disability.

Those who request an accessible apartment shall be processed in accordance with the procedures for apartments of four bedrooms or less described in Section V(C) above, and shall be subject to the rental plan described in Section VII(B)(2) below.

-17-

## VI.  TENANT TRANSFERS WITHIN PUBLIC HOUSING

### A.  The Transfer Process

Housing Authority tenants shall be permitted to apply for a transfer from one apartment or project to another.  To do so, they must submit a written request to the manager of the project at which they reside, on the form designated by the Housing Authority, showing the reason for the transfer request.

If the project manager denies the request, he or she shall notify the tenant in writing of the reason for denial.  If the project manager approves the request, he or she shall assign a priority code to it and send it to FLD.

If FLD denies the transfer request, the tenant shall receive notice in writing of the reason for the denial.  If FLD approves the transfer request, and the tenant family meets all other transfer requirements (including a criminal background check where required), the transfer process shall be effected.

### B.  Transfer Priorities

Good causes for transfer, and their priority codes, are:

Code T0

♦   Tenants whose apartments have become uninhabitable by
    the family through no fault of their own.

With written notification to the Borough Director, the
project manager shall offer such tenants the first
appropriate vacancy within their current project.  If a
tenant in this category refuses to request an appropriate

-18-

transfer, the Housing Authority shall have the right to offer an appropriate transfer to that tenant.

- ◆ Tenants who must move within six months due to project renovation.

Such tenants may choose any project (including an individual project within a consolidated group of projects), whether or not it is designated as anticipating vacancies on the Guide. After approval, these transfer requests shall be certified by FLD for assignment to the chosen project. If a tenant in this category refuses to request an appropriate transfer, the Housing Authority shall have the right to offer an appropriate transfer to that tenant.

- ◆ Tenants who wish to return to a project from which they were displaced due to project renovation once the renovation is complete. To qualify for this transfer, tenants must request it before the renovation is complete. If at the time of their request such tenants ask to return to the same apartment from which they were displaced, their request will be honored if the apartment is the right size for the family.

The above category of transferees shall be certified by FLD for assignment to their original project.

- ◆ As the result of a stipulation approved by the Members of the Housing Authority, tenants who live in or soon will be living in underoccupied apartments pursuant to Housing Authority standards (e.g., one person living in a two-bedroom apartment).

The project manager shall offer such tenants the first appropriate vacancy within their current project. If a tenant in this category refuses to request an appropriate transfer, the Housing Authority shall have the right to offer an appropriate transfer to that tenant.

- ◆ Public housing tenants in a City/State project taking a City/State Section 8 voucher apartment.

The project manager shall offer such tenants the first appropriate vacancy within their current project.

- ◆ Tenants in an underoccupied City/State Section 8 voucher apartment moving to a smaller City/State Section 8 voucher apartment.

This category of transferees may choose any City/State project, whether or not it is designated as anticipating vacancies on the Guide. After approval, these transfer requests shall be certified by FLD for assignment to the chosen project. If a tenant in this category refuses to request an appropriate transfer, the Housing Authority shall have the right to offer an appropriate transfer to that tenant.

- ◆ Public housing tenants moving from a City/State project to a federal project.

Such tenants may choose any federal project (including an individual project within a consolidated group of projects), whether or not it is designated as anticipating vacancies on the Guide. After approval, these transfer requests shall be certified by FLD for assignment to the chosen project.

These seven categories of transfers shall have priority over all other transfers and new applicants.

Code T1

Tenants who are:

- ◆ Going to be displaced due to project renovation, but not within the next six months.

- ◆ Displaced because their apartment is needed for project use. This category includes tenants forced to leave the Housing Authority's MHOP program (Multifamily Home Ownership Program) because of a reduction in the size of the program.

- ◆ Living in extremely underoccupied apartments pursuant to Housing Authority standards (e.g., one person living in a three-bedroom apartment).

The three categories of transferees described above may choose any project (including an individual project within a consolidated group of projects), whether or not it is

-20-

designated as anticipating vacancies on the Guide.  After approval, these transfer requests shall be certified by FLD for assignment to the chosen project.  If a tenant in one of these four categories refuses to request an appropriate transfer, the Housing Authority shall have the right to offer an appropriate transfer to that tenant.

♦    No longer eligible to reside in their elderly building or project.

The above category of transferees must choose their current project or consolidation if it contains general population apartments.  If not, these transferees may choose any project (including an individual project within a consolidated group of projects), whether or not it is designated as anticipating vacancies on the Guide, and after approval, these transfer requests shall be certified by FLD for assignment to the chosen project.  If a tenant in this category refuses to request an appropriate transfer, the Housing Authority shall have the right to offer an appropriate transfer to that tenant.

♦    Eligible for and request an accessible apartment.

The above category of transferees must choose their current project if the project has one or more current vacancies for an accessible apartment in the appropriate size.

If the current project contains one or more accessible apartments of the appropriate size, but has no current vacancies for such an apartment, such transferees may either choose their current project (intra-project transfers under the rental plan specified in Section VII(B)(2) below) or may choose to  transfer to a different project (inter-project transfers under the rental plan specified in Section VII(B)(2) below).  In the latter case, such transferees must select one of the five boroughs of the city, and shall be certified to FLD, to be processed as described in Section V(E) above.

If the current project contains no accessible apartments of the appropriate size, such transferees must select one of the five boroughs of the city, and shall be certified to FLD, to be processed as described in Section V(E) above.  (For purposes of the rental plan specified in

-21-

Section VII(B)(2) below, such transferees shall be classified as intra-project transfers.)

Code T2

Tenants who are:

- ♦ Living in underoccupied apartments pursuant to Housing Authority standards (e.g., one person living in a two-bedroom apartment).

The above category of transferees may choose any project (including an individual project within a consolidated group of projects), whether or not it is designated as anticipating vacancies on the Guide.  After approval, these transfer requests shall be certified by FLD for assignment to the chosen project.  If a tenant in this category refuses to request an appropriate transfer, the Housing Authority shall have the right to offer an appropriate transfer to that tenant.

- ♦ Victims of domestic violence or intimidated witnesses/victims.

- ♦ Suffering a rent hardship.  (Applies only to projects with income restrictions, including the MHOP program and other projects which are not defined as conventional public housing projects.)

- ♦ Choosing to leave a special-purpose program.

- ♦ Victims of a traumatic incident in their project. (The transfer request must be submitted no later than one year after the traumatic incident.)

The four categories of transferees described above may choose only the borough to which they would like their request assigned.  After approval, the transfer request shall be certified by FLD for assignment.  (The first category above will not be placed near their current residence, and such transferees in Staten Island may not choose Staten Island.  These transferees shall be assigned proportionately to all of the Housing Authority's projects [except any project with minimum income requirements, City/State Section 8 voucher vacancies, and the Section 8 new construction projects], based upon the total number of

-22-

apartments in each project.)  If a tenant in the second
category refuses to request an appropriate transfer, the
Housing Authority shall have the right to offer an
appropriate transfer to that tenant.

- ◆  Related to a family member who dies in the apartment
  at which such tenant resides.  (The transfer request
  must be submitted no later than one year after the
  death.)

The above category of transferees may choose to transfer
within their current project.  If these transferees wish
to leave their current project, or their current project
cannot accommodate their need for a transfer, they may
choose only the borough to which they would like their
transfer request assigned.  After approval, such transfer
requests shall be certified by FLD for assignment.

- ◆  Referred by the Administration for Children's
  Services ("ACS") because they have a child or
  children in foster care, and ACS will not release the
  child(ren) until the tenants obtain an apartment
  large enough to accommodate the child(ren).

The above category of transferees must choose their
current project, unless the project contains no apartments
of the size required.  In these cases transferees who need
apartments of five bedrooms or more may choose only the
borough in which they wish to live (these requests shall
be certified by FLD); those who need apartments of four
bedrooms or less may choose any project designated as
anticipating vacancies on the Guide (these requests shall
be certified to the selected project).

Code T3

Tenants who are:

- ◆  "Extremely Overcrowded" based on the approved
  occupancy of the apartment.

- ◆  Involved in long-term friction between neighbors.

The two categories of transferees described above must
choose their current project, unless the project contains
no apartments of the size required, or an intra-project

-23-

transfer will not resolve the friction.  In these cases transferees who need apartments of five bedrooms or more may choose only the borough in which they wish to live (these requests shall be certified by FLD); those who need apartments of four bedrooms or less may choose any project designated as anticipating vacancies on the Guide (these requests shall be certified to the selected project).

♦    In need of medical care not available within 60 minutes travel time from the project.

Transferees who show that the medical care is available only at a specific facility not within 60 minutes travel time shall not be permitted to choose a project.  Rather, the Housing Authority shall assign them to a project near that facility, whether or not the project is designated as anticipating vacancies on the Guide.  When the medical care is not limited to a specific facility, transferees who need apartments of five bedrooms or more may choose only the borough in which they wish to live (these requests shall be certified by FLD, which shall assign them to projects near the appropriate facilities); those who need apartments of four bedrooms or less may choose a project designated as anticipating vacancies on the Guide which is within a reasonable distance of a facility where the required care is available (these requests shall be certified to the selected project).

♦    Seriously ill and desire to continue critical care treatment with a doctor or hospital with which the tenants have a long-term relationship where travel to that doctor or hospital now imposes a hardship.

The above category of transferees shall not be permitted to choose a project.  Rather, the Housing Authority shall assign them to a project near the doctor or hospital, whether or not the project is designated as anticipating vacancies on the Guide.

♦    In need of continuing home health care which no household member can provide and that is not available within 60 minutes travel time from the project.

♦    In need of continuing child care to enable a family member to work, which no household member can

-24-

provide, and which is not available within 60 minutes travel time from the project.

Transferees who show that a relative will provide the health or child care shall not be permitted to choose a project.  If the relative lives in a Housing Authority project, the Housing Authority shall assign the transferee to that project, whether or not it is designated as anticipating vacancies on the Guide.  Otherwise, the Housing Authority shall assign the transferee to a project near that relative, whether or not the project is designated as anticipating vacancies on the Guide. Transferees who do not have relatives who will provide the required care and who need apartments of five bedrooms or more may choose only the borough in which they wish to live (these requests shall be certified by FLD, which shall assign them to projects near appropriate providers or facilities); those who need apartments of four bedrooms or less may choose a project designated as anticipating vacancies on the Guide which is within a reasonable distance of appropriate providers or facilities (these requests shall be certified to the selected project).

- ♦    Willing to provide continuing home health care to a relative in a different project, which no member of the relative's household can provide and that is not available within 60 minutes travel time from the relative's project; or continuing child care to enable a relative in a different project to work, which no member of the relative's household can provide, and that is not available within 60 minutes travel time from the relative's project.

The above category of transferees shall be assigned to the relative's project, whether or not it is designated as anticipating vacancies on the Guide.

- ♦    In need of an extra bedroom to accommodate special medical equipment such as an oxygen tank or a hospital bed.

- ♦    Disabled in a non-elevator building and in need of a low-floor apartment.

The two categories of transferees described above must choose their current project unless the project contains

-25-

no apartments of the size required, or cannot otherwise accommodate the need for transfer.  In these cases, transferees who need apartments of five bedrooms or more may choose only the borough in which they wish to live (these requests shall be certified by FLD); those who need apartments of four bedrooms or less may choose any project designated as anticipating vacancies on the Guide (these requests shall be certified to the selected project). Disabled tenants reserve their rights to have reasonable accommodations made for their disability.

<u>Code T4</u>

Tenants who are:

- ♦ "Overcrowded" based on the approved occupancy of the apartment.

Transferees who are "Overcrowded" must choose their current project unless the project contains no apartments of the size required.  In these cases transferees who need apartments of five bedrooms or more may choose only the borough in which they wish to live (these requests shall be certified by FLD); those who need apartments of four bedrooms or less may choose any project designated as anticipating vacancies on the Guide (these requests shall be certified to the selected project).

- ♦ Required to travel more than 90 minutes due to a change in work location.

- ♦ Eligible for residence in an elderly project and who wish to move from a general population project to an elderly project.

- ♦ Living in an elderly project and who wish to move to a general population project.

Transferees in the three categories described above and who need an apartment of four bedrooms or less must choose from among projects designated as anticipating vacancies on the Guide.  Those transferees who need an apartment of five bedrooms or more may choose only the borough in which they wish to live.  Those requests shall be certified by FLD.

-26-

Transferees will make their project or borough choice when they submit their transfer requests.  If a transferee who may choose a project from the Guide refuses all projects then designated as anticipating vacancies on the Guide, or fails to choose a project, the transfer request shall be deemed "Dead" and no new transfer request from that tenant shall be considered for one year unless a new request falls into Code T0, T1 or T2 and states a different need for a transfer than the prior request.

## VII.  RENTING VACANCIES AT EXISTING PROJECTS

### A.   Project "Waiting Lists"

The Housing Authority's computerized TSAP program shall maintain separate "Waiting Lists" for each apartment size in the project.  For the purposes of this Plan, "Waiting List" shall be defined as all of the applications and transfer requests awaiting rental at each project.  All projects which consist of more than one building or group of buildings shall maintain a single "Waiting List" for each apartment size, unless the project includes accessible apartments or some buildings, or portions of buildings, which are Section 8 projects, City/State Section 8 voucher units, or are reserved for the elderly.  Such projects shall maintain separate "Waiting Lists" for accessible apartments, Section 8, elderly and non-elderly applicants.

-27-

Upon certification of an application (including an approved transfer request), the Housing Authority shall enter data from the application (including data as to the applicant's income, priority, date of certification, race/ethnicity and family size) onto the TSAP program for that apartment size and (unless the application has been designated for an actual vacancy) shall file the application alphabetically.

Once an applicant (including a transferee) with project choice has been certified to a project, the applicant may not request another transfer or change his or her project choice, unless the applicant has been on a project's "Waiting List" for more than two years without having been offered an apartment, or demonstrates "Changed Circumstances" requiring a change in location.

Applicants (including transferees) with project choice will receive only one offer of an apartment. If they reject that offer, their application request shall be deemed "Dead," unless they demonstrate that a temporary emergency prevents a move at the time of the offer.

Applicants (including transferees) who may not select a project may refuse one offer of an apartment. Upon the rejection, the applicant's place on the "Waiting List" shall be maintained and the applicant shall be offered the next appropriate vacancy that develops, subject to the rental plans described in Section  VII(B)

-28-

below.   If the second offer is rejected, the application shall be deemed "Dead" unless the applicant demonstrates that a temporary emergency prevents a move at the time of the second offer.

All project managers shall be required to review their "Waiting Lists" once a year by contacting all applicants, including transfers. The manager shall mail a letter by first class mail to each applicant to determine whether the applicant is still interested in public housing, whether there have been any changes in family composition affecting the required apartment size and whether there have been any changes in circumstances which might affect eligibility.

If the manager gets no response within three weeks after the mailing, the manager shall then attempt to contact the applicant by telephone.   If after forty-five days of the mailing, there is still no response, or if the applicant is no longer interested in public housing, those applications shall be deemed "Dead."

If it appears that the applicant may no longer be eligible for public housing or housing at that project, or if the applicant has been on the project "Waiting List" for more than two years and wishes to choose another project, or where there are "Changed Circumstances" under this Plan that may require reassignment to a new project, the project manager shall send the application to FLD which shall arrange a new eligibility interview and/or a new project choice, as required. When an applicant is reassigned to a new "Waiting List," the original

date of certification shall control.  When an applicant must make a new project choice, Housing Applications shall use the Guide currently in effect.

**B.   Selecting Transferees and New Applicants for Rentals**

  **1.   Non-Accessible Apartments**

In each apartment size, for all vacancies not taken by T0 transferees, the first vacancy shall be rented to the transferee with the highest transfer priority, the second vacancy shall be rented to the transferee with the highest priority for extremely overcrowded or overcrowded, the third vacancy shall be rented to the new applicant with the highest Working Family Preference priority, and the fourth vacancy to the new applicant with the highest Need Based Preference priority.  This rotation shall continue, subject to the following conditions:

(1)   If there is no transferee on the "Waiting List" for a transferee vacancy, the Housing Authority shall not hold the vacancy to await a transferee, but shall offer the vacancy to the new applicant with the highest Working Family Preference priority, and so forth.  However, the Housing Authority shall be permitted to offer the second vacancy to a transferee if one subsequently appears on the "Waiting List" before the second vacancy occurs, and so forth.

(2)   The Housing Authority shall rent no more than the federally-permitted maximum percentage of the anticipated vacancies per year in any project to new applicants in Income Tiers III and II, except at the Forest Hills Coop, to which the federally-permitted maximum percentage does not apply.

-30-

When a vacancy occurs, the project manager shall use the TSAP computer program, which will identify the appropriate transferee or new applicant for that vacancy, using the criteria of apartment size, priority, and date of certification, in that order. If the appropriate transferee or new applicant has been certified to FLD, the project manager shall call FLD for the transfer request or application.

### 2. **Accessible Apartments**

In accordance with 24 C.F.R. § 8.27, every vacancy in an accessible apartment shall be offered to an intra-project transferee eligible for an accessible apartment of that size, who shall be selected using only the criteria of transfer priority code and certification date, in that order. If there are no such intra-project transferees available for such a vacancy, it shall be offered to an inter-project transferee eligible for an accessible apartment of that size, who shall be selected using only the criteria of transfer priority code and certification date, in that order.

If there are no eligible transferees available for such a vacancy, it shall be offered to a new applicant eligible for an accessible apartment of that size, who shall be selected using only the criterion of certification date. Any such rentals shall be included in the total of annual rentals to new applicants, but shall

-31-

not be counted against any annual limits on rentals to Tier III and Tier II new applicants.

In accordance with 24 C.F.R. § 8.27, if there are no eligible transferees or eligible new applicants available for such a vacancy, it shall be rented to a non-eligible family according to the rental plan for non-accessible apartments, described in Section VII(B)(1) above.

C.    **AROC Interviews and Rental Interviews**

The Tenant Association at each project shall have the right to form an Applicant Review and Orientation Committee ("AROC") to interview and orient new applicants and transferees after their certification to the project and before they rent there.  The Housing Authority shall train the members of the AROC to ensure that their interviews comply with the same laws and regulations applicable to the Housing Authority itself.  Members of the AROC shall also be required to sign agreements to keep confidential any personal information revealed to them for the purpose of these interviews.

Prior to rental, the project manager or designee shall conduct a rental interview of every new applicant and transferee, to update essential information and to ensure that the family is still eligible for public housing or for transfer.

If either the AROC interview or the rental interview reveals any reason to believe that the new applicant or transferee may not be

eligible for public housing or for transfer, the project manager may return the application or transfer request for further review. The Housing Authority shall notify the applicant or transferee in writing that his or her application or transfer request has been returned for further review, at which time the circumstances causing that review will be discussed with the applicant or transferee and confirmed in writing promptly thereafter.

## VIII. OUTREACH PROGRAMS

### A.    Project Outreach Plan

If a project manager has no applications (including transfer requests) for a given apartment of four bedrooms or less, or has an actual vacancy for such an apartment that all certified applicants (including transferees) for that apartment size have refused, the manager shall ask the Borough Director or designee for permission to borrow applications from a nearby project. If the Borough Director or designee approves, the Borough Director or designee shall contact FLD. Additionally, if ATAD determines that borrowing is necessary to solve the project's need for applications, ATAD may direct that the project be included in the Project Outreach Plan.

If FLD determines that borrowing applications from a nearby project is likely to solve the project's need for applications, it shall select the nearest project that has a sufficient number of applications for that size apartment. However, if the borrowing

project's tenant body is more than 30% white, FLD shall not select a project whose tenant body is also more than 30% white.

Following FLD approval, the Housing Authority shall mail a canvass letter to all the applicants (including transferees) certified to the lending project who qualify for the apartment size for which applications are needed. The letter shall advise them that they may elect to have their applications transferred to the borrowing project, and that if they respond promptly, they may be housed sooner than if their applications were to remain at the lending project. The letter shall explain that applicants may have their applications remain at the lending project without penalty.

The Housing Authority shall enter transferred applications onto the borrowing project's computerized "Waiting List" in the order that applicants respond to the canvass letter. The borrowing project shall offer them vacancies according to the rental plans described in Section VII above. In no case shall more than half the applications for a particular apartment size on the lending project's "Waiting List" be borrowed.

If FLD determines that no nearby project has a sufficient supply of applications, the Borough Director or designee shall request that the project be included in the Applications Outreach Plan.

-34-

### B.   Applications Outreach Plan

When a project has failed to attract sufficient applicants by means of Project Outreach, or cannot use Project Outreach because no nearby project has a sufficient number of applications on its "Waiting List," the Borough Director or designee shall request that the project be included in the Applications Outreach Plan. Additionally, if ATAD determines that borrowing is not likely to solve the project's need for applications or that the project has, or within the next six months is likely to have, several unfilled vacancies, ATAD may request that the project be included in the Applications Outreach Plan.

With the approval of the Director of ATAD, an applications outreach plan shall be initiated, as follows: ATAD shall poll its computer system (excluding "Dead" applications) using the same criteria as in selecting applicants for eligibility interviews to locate applicants of the appropriate family size (and applicable income level in those projects with income restrictions), from among all applicants who, on their applications, selected the borough in which the outreach project is located. The number of applicants selected shall be based upon the number of applications needed by the outreach project(s) to fill existing vacancies and to develop a six-month "Waiting List."

Applicants identified in this manner shall be notified by mail that the Housing Authority has or anticipates near-term vacancies at the outreach project(s).  The letter shall inform applicants that the Housing Authority will interview them for eligibility sooner than if they waited to be selected for an eligibility interview based upon the criteria described above, if they are willing to limit their project choice(s) only to the outreach project(s).

Applicants who return the canvass letter agreeing to waive any right to select any projects not included in the Applications Outreach Plan, as of the date of the eligibility interview, shall be scheduled for eligibility interviews in the order in which their responses are received.  Upon being found eligible, such applicants shall be certified to the outreach project(s) and shall be processed as are all other applications on the project "Waiting List."

Applicants interviewed for the Applications Outreach Plan who refuse certification to the outreach project(s) shall have their applications returned to files to await an interview based upon the criteria described above.

## IX.    **TENANTING NEW PROJECTS**

Projects under construction shall be included in the Project Outreach Plan approximately six months prior to their scheduled opening date.  The Housing Authority shall ensure that the applicant pool of the proposed project outreach fairly reflects the racial

-36-

composition of the applicant pool for the borough and the apartment size(s) in question.  In addition, prior to opening, new projects may be designated on the Guide as anticipating vacancies and may be included in the Applications Outreach Plan set forth in Section VIII(B) above.  After opening, projects shall be tenanted in accordance with the provisions of this Plan.

## X.    ECONOMIC INTEGRATION PLAN

In accordance with 42 U.S.C. § 1437n(a)(3)(B) (1999), the Housing Authority has designated as Working Family Priority Consolidations those projects where the average income is 85% or less of the Authority-wide average for federal, non-elderly projects or buildings ("non-elderly average").  These projects will participate in the Housing Authority's Economic Integration Plan, which includes the following elements:

- ◆ Applications Outreach to Tier III and Tier II applicants with incomes exceeding the "non-elderly average," informing them that they may be selected sooner for an eligibility interview if they are willing to accept one of the Working Family Priority Consolidations.

- ◆ Immediate scheduling of new Tier III and Tier II applicants with incomes exceeding the "non-elderly average," if they are willing to accept one of the Working Family Priority Consolidations.

- ◆ At the time of project choice, offering Working Family Priority Consolidations to Tier III and Tier II applicants with incomes exceeding the "non-elderly average," even if the Consolidations are not anticipating vacancies.

## XI.  RECORD KEEPING

The Housing Authority's computerized TSAP program shall maintain computerized "Waiting List" logs listing all applicants certified for rental.  In projects with accessible apartments or where apartments are designated for the elderly or as a Section 8 project, the computer shall maintain a separate log for those apartments.  The logs shall contain the following information for each applicant:  name, application number, certification date, "Income Tier," priority, family composition/apartment size, status (Working Family Preference new applicant, Need Based Preference new applicant, transferee, or outreach applicant), race/ethnicity, and need for a handicapped-accessible apartment.  The logs shall also list the disposition of the application including, as appropriate, date of apartment offer(s), result(s) of offer(s)--apartment number offered, move-in or refusal date(s), refusal reason(s), return to files, and reason for the disposition.

Data on apartment rentals shall be added to the Housing Authority's computer system.

## XII.  MONITORING PLAN PERFORMANCE

Not less than once a year, representatives of the Audit Department shall review both the turnover logs and the computerized "Waiting List" logs to make certain that the tenant selection and assignment procedures set forth in this Plan are being followed and

-38-

are working efficiently.  Based upon the review, Audit shall prepare a report, which analyzes the overall efficiency of the Plan.  Any irregularities in following the procedures set forth in the TSAP shall be noted in this report and shall be brought to the attention of the Management, Operations Services, Applications and Law Departments.

# EXHIBIT C

# NEW YORK CITY HOUSING AUTHORITY

January 6, 1998

**GM-3595A** *REVISED*
*(Obsoletes GMs 3468B, 3468D and 3468G)*

**TO:** Distribution C
**FROM:** Nicholas Calace, Assistant Deputy General Manager for Operations
**SUBJECT:** **TSAP: REVISED TRANSFER PROCEDURE**

## I.    Introduction

The revised **Tenant Selection and Assignment Plan (TSAP)** changed transfer options, transfer types and occupancy standards as they apply to transfers.  This **GM** updates tenant transfer procedures and occupancy standards to reflect those changes to **TSAP** and the 1995 creation of Borough Management offices.  It also incorporates the processing of **Inter**-project transfers for tenants who request an accessible apartment for themselves or for disabled family members.

## II.    Forms and Charts

A.    **Appendix 1** lists the forms used to process transfers.

B.    **Appendix 2** lists

  1.    Revised **Transfer Types** and **Priority Codes**

  2.    **Reasons for Transfer** upon which to base a tenant's eligibility

  3.    Revised **Transfer Options**, which includes Transfer Types for which tenants needing five-room and six-room apartments may choose from the **Interviewer's Guide**.

C.    **Appendix 3** reflects the revised NYCHA Occupancy Standards as they apply to **overcrowded** and **extremely overcrowded** apartments.

## III.    Tenant Request for Transfer

**Pursuant to a court decision (U.S. District Court for the Southern District of New York in the case of Davis against the New York City Housing Authority, 90 Civ. 628 (RWS), December 22, 1993), on or after January 1, 1994, a request to transfer must be filed** *by the tenant* **and** *in writing* **to be valid.**  Staff may **not** automatically place a tenant on a transfer list for any reason.

Upon request, staff must give the form, **NYCHA 040.050, Tenant Request for Transfer**, to any tenant making the request.  However, the Manager may approve a transfer request **only** if the tenant is eligible and has a valid reason to transfer.

A.    Tenant states desire to transfer.

B.    Housing Assistant gives the tenant the form, **NYCHA 040.050, Tenant Request for Transfer**, and:

1.   Instructs the tenant to return the completed **Tenant Request for Transfer** with all documents and letters that verify the need for the requested transfer attached.

2.   Examines the **Tenant Request for Transfer** returned by the tenant for completeness.

3.   Determines that the tenant's needs fall within one of the reasons for transfer *(see Appendix 2)*.

4.   Enters the **TYPE** of transfer (letter designation) and **PRIORITY CODE** on the **Tenant Request for Transfer**.

   •   If more than one reason for transfer, process for the highest priority *(T**0** is highest, T**4** is lowest)*.

5.   Submits each **Tenant Request for Transfer** form with documentation, *if available*, to the Manager for review.

C.   The Manager shall review each **Tenant Request for Transfer** to:

1.   Confirm the correctness of transfer **TYPE** and **PRIORITY CODE**.

2.   Confirm that the tenant has submitted sufficient verification in support of the request.

   •   For all transfer reasons *except* **Victim of Domestic Violence/Intimidated Victim/Intimidated Witness Transfer Requests (Types G & H,***VDV/IV/IW - see GM-3560), if* insufficient verification, the Manager shall return a **Tenant Request for Transfer** to the Housing Assistant for additional information. Housing Assistants shall use **NYCHA 040.050A, Additional Information Letter**.

3.   Disapprove a **Tenant Request for Transfer** for any of the following:

   a.   Reason for the transfer does not fall into one of the valid categories *(see Appendix 2)*.

   b.   The tenant failed to provide additional information requested to verify the need for transfer.

   c.   The family has an unsatisfactory record of tenancy *{see* **Management Manual Chapter IV, Subdivision XIII, Section A. 10 (3)}**.

      (1)   Under legal action for non-payment of rent or meets criteria for chronic delinquency in the payment of rent

GM-3595: TSAP REVISED PREFERENCES AND SELECTION OF REFERRALS FOR RENTAL

    (2)    Unsatisfactory behavior

    (3)    Poor Housekeeping

    (4)    Breach of Rules and Regulations

    (5)    Other factors of Non-desirability

d.    Case submitted for termination of tenancy, or BAWDY HOUSE proceeding commenced.

- The tenant may submit a new **Tenant Request for Transfer** if the charges are resolved in favor of the tenant as follows: eligible, eligible with permanent exclusion, probation period expired or Bawdy House proceeding did not result in an adverse decision against the tenant.

e.    The Authority Board has terminated tenancy.

If disapproved, the Manager shall write or type the reason for disapproval in the appropriate space on the **Tenant Request for Transfer** and in the **Interview Record**. (S)he shall sign the disapproved **Tenant Request for Transfer** and mail **NYCHA 040.050B, Disapproved Transfer Request Letter**, to the tenant.

The Housing Assistant shall file each disapproved **Tenant Request for Transfer** and a photocopy of the **Disapproved Transfer Request Letter** in the appropriate tenant's folder.

**NOTE:**    Submit each **Tenant Request for Transfer** for **VDV/IV/IW (refer to GM-3560)** or **Traumatic Incident**, whether approved or disapproved, **to the Borough Director.** *Do not* mail a **Disapproval Letter to these tenants.** Go to Section IV., *Tenant Transfer Record Card,* **for further instructions**.

    **Traumatic Incident** *(defined for Borough and Development Management Department Staff)*: Household must have had a family member as an *authorized* occupant of the apartment who was the victim of an incident *on development grounds* that resulted in that person's *death by other than natural causes.*

4.    Approve each **Tenant Request for Transfer** that falls into one of the valid categories, has sufficient verification and appears to be eligible.

IV.     **Tenant Transfer Options**

A.     Upon approving a **Tenant Request for Transfer**, the Manager shall indicate *all* permissible **Transfer Options** *(see Appendix 2)* in the proper spaces on **NYCHA 040.050, Tenant Transfer Options and Conditions**, the reverse side of the **Tenant Request for Transfer**, as follows:

   1.   Check the box(es) for **INTRA** and/or **INTER** depending on the tenant's eligibility.

   2.   Check the **BOROUGH** box if eligible for borough choice only.

   3.   Check the **PROJECT** box and write **ANY** to the immediate right of the word **PROJECT** if eligible for *any* development.

   4.   Check the **PROJECT** box and write **NYCHA** in the box beneath the word **PROJECT** if the tenant is eligible only for a development to be designated by the Authority, i.e., needs a development near a specific facility or family member, or is returning to a development after being displaced.

   5.   Check the **PROJECT** box and write **GUIDE** to the immediate right of the word **PROJECT** if eligible to choose from the Interviewer's Guide.

   6.   Return the **Tenant Request for Transfer** to the Housing Assistant to finish completing **NYCHA 040.050, Tenant Transfer Options and Conditions**, the reverse side of the **Tenant Request for Transfer**.

B.     The Housing Assistant shall call the tenant in to discuss transfer options using the **Additional Information Letter, NYCHA 040.050A.**

   •     **Except for Transfer Type P, requesting an accessible apartment** *(each development receives the **Interviewer's Guide - Accessible Apartments** as revised)*, do *not* call in a tenant who is eligible to choose a development from the **Interviewer's Guide** until the Borough Director has approved the **NYCHA 040.050C, Tenant Transfer Record Card**, and returned it to the development with the **Interviewer's Guide**.

   1.   If the tenant fails to appear for this interview, write on the line in box II. **Tenant Did Not Appear,** sign the bottom of the form and file the **Tenant Request for Transfer** in the Tenant Folder.   Record the tenant's failure to appear in the Interview Record.

   2.   When the tenant appears for this interview, the Housing Assistant shall:

a. Completely review and explain the options for which the tenant is eligible as written in **Section I.** of **NYCHA 040.050**, *Transfer Options.*

    (1) If the tenant is eligible to choose from the Interviewer's Guide, write the tenant's choice from the *Guide that the Borough sent with the approved Transfer Card* (OR THE MOST RECENTLY REVISED INTERVIEWER'S GUIDE - ACCESSIBLE APARTMENTS) in the box beneath the word **PROJECT**.

    (2) If the tenant is eligible for borough choice only, write the borough(s) chosen in the box beneath the word **BOROUGH**.

    (3) If the tenant is eligible to choose *any* development, write the name of the development chosen in the box beneath the word **PROJECT**.

b. Write the tenant's transfer choice on the line in box II.

    (1) *The tenant must indicate his/her acceptance of the type of transfer for which (s)he is eligible only and may not indicate any other preference.*

    (2) *If the tenant will not accept the type of transfer for which (s)he is eligible, write on the line in box II.* **Tenant Declines Appropriate Transfer Options** *and cease transfer processing. Unless the tenant changes his/her mind and agrees to the appropriate option within 30 days of the Transfer Option Interview, tenant cannot re-submit the same transfer request for one year from the Transfer Option Interview date. Have the tenant sign the bottom of the form, and file the Transfer Request in the Tenant Folder. Record the tenant's decision in the Interview Record.*

c. Explain **Transfer Conditions** to the tenant.

d. Have tenant sign the **Transfer Options and Conditions**.

e. Sign the bottom of **Transfer Options and Conditions**.

f. Prepare a **Tenant Transfer Record Card** for each tenant who has chosen and is eligible for an **Inter-Project** Transfer pursuant to *Appendix 2* (see **Section V.**).

g. Enter the data for **Intra-Project** transfers into the computerized waiting list using the **TSAP System** and file the

*approved* **Tenant Request for Transfer** in alphabetical order in your application file.  Use the date the *tenant signed* the **Transfer Options and Conditions** as the *Certification Date*.

- File a copy of the *approved* **Tenant Request for Transfer** in the Tenant Folder.

## V.    Tenant Transfer Record Card

The Manager or designee (staff) shall prepare a form, **NYCHA 040.050C, Tenant Transfer Record Card**, for each **INTER-PROJECT** transfer approved by the Manager, and each **VDV/IV/IW** or **Traumatic Incident** transfer whether or not approved.  Staff shall:

A.    Type the name of the initiating development, and the tenant's **account number (MAP#-S.H.#-APT#)**.

    a.    Consolidated developments ***must*** use the ***managing development's*** name.

    2.    In the account number section, consolidated developments must use the ***actual* Map Number** for the development in which the tenant resides, **NOT** the managing development's Map Number).

B.    Type the Head of Household's Social Security number in the designated space.

C.    Check the box next to the tenant's race/ethnic group.

D.    In the section, **Tenant's Transfer Choice**, type the **Transfer Type**, **Priority Code** and the tenant's transfer choice (from **Tenant Transfer Options and Conditions**).

- If eligible to choose from the **Interviewer's Guide**, check the box **Eligible to Choose from Guide**.

- If a **Transfer Type P, Requesting an Accessible Apartment**, check **YES** in the box, **MOBILITY IMPAIRED**, and type the effective date of the **Interviewer's Guide - Accessible Apartments** in the REASON FOR TRANSFER box.

E.    Type in **Sections 1a., 1b.** and **1c.** on the **Tenant Transfer Record Card** the tenant's original application date, original date of move in and reason for admittance.

F.    Type in the **Security Deposit** box:

    1.    Amount of cash security and the date paid, and the letter **X** in the

appropriate box to indicate whether paid by Tenant or Welfare, **or**

2.  If **no** payment because the tenant was on welfare and submitted a letter, type **X** in the box for Prom. Note, **or**

3.  If an installment plan, type **INSTALLMENT** next to **Security Deposit** and type the amount paid to date next to **Cash Paid**.

G.  Submit each **Tenant Transfer Record Card** to the Manager for disposition.

H.  Send each approved **Tenant Transfer Record Card** to the Borough Office, **or if the tenant requested an accessible apartment**, to the **Operations Services Department's Section 504 Compliance Unit**, for disposition. Attach a copy of the **Tenant Request for Transfer** and all supporting documents.

   •  File a copy of each approved **Tenant Transfer Record Card** and all substantiating documentation in the appropriate Tenant Folder.

NOTE:  If the tenant is eligible to choose from the **Interviewer's Guide** and the Borough Director has already approved the **Tenant Transfer Record Card**, have the tenant select a development from the **Interviewer's Guide** returned by the Borough (see **Section IV. B. 2.a.(1)**). Type the development chosen and send the **Tenant Transfer Record Card** with documentation to the Department of Housing Applications' Field Liaison Division **(FLD)**.

## VI.  Borough Processing

The Borough Administrator shall immediately review a **Tenant Transfer Record Card, NYCHA 040.050C**, upon receipt, and:

A.  Process a **Tenant Transfer Record Card** for a **Victim of Domestic Violence, Intimidated Victim or Intimidated Witness (VDV/IV/IW)** according to **GM-3560**.

B.  Forward a disapproved **Tenant Transfer Record Card** for **Traumatic Incident** to the Borough Deputy Director for review. If the Borough Deputy Director:

1.  Concurs with the disapproval, (s)he shall return the **Tenant Transfer Record Card** to the initiating development after signing disapproval and citing the reason(s).

2.  Approves the Transfer Request, (s)he shall forward the **Tenant Transfer Record Card** to **FLD** after signing approval.

GM-3595: TSAP REVISED PREFERENCES AND SELECTION OF REFERRALS FOR RENTAL

C.    For all other types of transfers, approve or disapprove as appropriate.

1.    If approved and staff checked the box, **Eligible to Choose from Guide**, send the approved **Tenant Transfer Record Card** and the current **Interviewer's Guide** to the initiating development.

2.    Forward an approved **Tenant Transfer Record Card** not requiring the **Interviewer's Guide**, with all documentation attached, to **FLD** after signing approval.

3.    Return a disapproved **Tenant Transfer Record Card**, except **VDV/IV/IW**, to the initiating development after signing disapproval and citing the reason(s).

## VII.    Section 504 Compliance Unit

The **Section 504 Compliance Unit** will review and evaluate all **Transfer Type P INTER-project** transfers, tenants who request an accessible apartment.  If eligible, they will certify each **Tenant Transfer Record Card** to an appropriate development waiting list and transmit the transfer documents to the appropriate receiving development.

•     The receiving development will enter the **TSAP** information upon receiving a **Tenant Transfer Record Card** from the **Section 504 Compliance Unit**.

In this capacity, the **Section 504 Compliance Unit** shall act in place of the Borough and the Department of Housing Applications' Field Liaison Division.

For the refusal of an apartment assignment or a change that requires recertification, the **Section 504 Compliance Unit** will receive and follow-up on the returned document(s).  Contact **Section 504 Unit** staff at **212 306-7777**.

## VIII.    Field Liaison Division

The Department of Housing Applications' Field Liaison Division **(FLD)** shall review each **Tenant Transfer Record Card** and certify it to a development or borough waiting list according to the TSAP.

**FLD** staff shall prepare and mail a letter (see *Certification Letter, NYCHA 070.081A*, attached) to each transfer tenant upon certification.  FLD staff shall send a copy of the *Certification Letter* to the initiating development.

IX.    **Rentals**

To call in a transferee for rental *(except **VDV/IV/IW** - see **GM-3560**)*, in addition to telephone calls when practicable, staff shall use **NYCHA 040.050F**, **Notification of Available Apartment**, via **first class mail**, which allows five **(5)** business days for a response.    The **Manager** must ensure that staff sends a copy of the **Notification of Available Apartment** to the initiating development via **inter-office mail**.

*Renting staff at the receiving development must telephone staff at the initiating development immediately upon issuing keys (except for VDV/IV/IW).*

For assistance with this procedure or the TSAP computer system, staff may contact the Department of Housing Application's TSAP Coordinator at 212 306-3652.


Nicholas Calace


Attachments

# EXHIBIT D

NEW YORK CITY HOUSING AUTHORITY

January 19, 2007

**GM-3595D Revised**

**TO:** Distribution C
**FROM:** Robert Podmore, Deputy General Manager for Operations
**SUBJECT:** **TSAP – REVISED TRANSFER GUIDE AND OCCUPANCY STANDARDS CHARTS**

## I.    Introduction

This General Management Directive (GM) revises the TSAP Transfer Guide chart.

> This GM amends:
> - **GM-3595C, TSAP – REVISIONS TO THE TRANSFER PROCEDURE** (September 1, 2000), and
> - **GM 3595D, TSAP – REVISED TRANSFER GUIDE AND OCCUPANCY  STANDARDS CHARTS** (September 11, 2006)

## II.    TSAP Transfer Guide and Occupancy Standards Charts

Staff must disregard previous versions of the TSAP Transfer Guide chart, and instead use only the attached TSAP Transfer Guide chart, *Appendix A*, dated January 19, 2007, when processing transfers.

Occupancy Standards for Families chart, *Appendix B*, dated September 11, 2006, is unchanged and should be used when processing transfers.

## III.    Highlights of the Revised TSAP Transfer Guide (Appendix A)

This revision clarifies the travel time criteria needed in order to qualify for any of the following transfer types:

1. Priority Code **T3-C** (Needs medical care limited to a specific facility)

   Redefines the Reason for Transfer to clarity travel time criteria as follows:

   "Needs medical care limited to a specific facility not within 60 minutes travel time from current development."

2. Priority Code **T3-F** (Needs continuing home health care)

   Redefines the Reason for Transfer to clarity travel time criteria as follows:

   "Needs continuing home health care, which **NO** household member can provide, and that is not available within 60 minutes travel time from the current development."

3.  Priority Code **T3-G** (Needs continuing childcare)

Redefines the Reason for Transfer to clarity travel time criteria as follows:

"Needs continuing childcare to enable household member to **work**, which <u>**NO**</u> household member can provide, and that is not available within 60 minutes travel time from the current development."

4.  Priority Code **T3-H** (Willing to provide continuing home health care or childcare to a relative in a different development)

Redefines the Reason for Transfer to clarity travel time criteria as follows:

"Willing to provide continuing home health care to a relative in a different development, **or** child care to enable a relative in a different development to <u>work</u>, which <u>**NO**</u> member of the relative's household can provide, and that is not available within 60 minutes travel time from the relative's development."

NEW YORK CITY HOUSING AUTHORITY
APPENDIX A
TENANT SELECTION AND ASSIGNMENT PLAN (TSAP) TRANSFER GUIDE

| PRIORITY CODE | TRANSFER TYPE | REASON FOR TRANSFER | TRANSFER OPTIONS (SEE NOTES ON PAGE 8) |
|---|---|---|---|
| T0 | A | Apartment uninhabitable through no fault of the tenant (e.g., fire, flood). | Tenant has **NO** choice. **NYCHA** will assign tenant to the **first available proper-sized** vacancy in the current development, unless: a. no proper-sized apartment exists in the current development; or b. tenant has waited 15 days, no proper-sized apartment has become available, and the tenant does not wish to wait any longer. In these cases, NYCHA will assign the tenant to a proper-sized apartment in a neighboring development. *[Staff may initiate the transfer by filing a Tenant Request for Transfer even if the Request is unsigned by the tenant.]* |
| T0 | B | Court or Borough Director ordered a family returned to apartment after eviction or lockout but apartment is not available. | |
| T0 | C | Displaced due to development renovation and wishes to return (tenant must file transfer request to return before the renovation is completed). | **ORIGINAL** development only. Tenant may request to return to apartment from which he/she was displaced only if the apartment is the correct size for family. (3) |

NEW YORK CITY HOUSING AUTHORITY
APPENDIX A
TENANT SELECTION AND ASSIGNMENT PLAN (TSAP) TRANSFER GUIDE

| PRIORITY CODE | TRANSFER TYPE | REASON FOR TRANSFER | TRANSFER OPTIONS (SEE NOTES ON PAGE 8) |
|---|---|---|---|
| T0 | D | Displaced for development renovation and must move within six months. | INTRA-project transfer or INTER-project transfer whether or not on the Guide to Anticipated Vacancies for Working Families or the Guide to Anticipated Vacancies for Need Based Families (GUIDE). [3] *[Staff may initiate the transfer by filing a Tenant Request for Transfer even if the Request is unsigned by the tenant.]* |
| T0 | E. | As a result of a stipulation approved by the NYCHA Board members, tenant's apartment is Underoccupied [2] or soon to be Underoccupied. | Tenant has NO choice. NYCHA will assign tenant to the first available proper-sized vacancy in the current development. *[Staff may initiate the transfer by filing a Tenant Request for Transfer even if the Request is unsigned by the tenant.]* |
| T1 | A | Displaced for development renovation and must move after six months. | |
| T1 | B | Displaced for development use of apartment. | INTRA-project transfer or INTER-project transfer whether or not on the Guide to Anticipated Vacancies for Working Families or the Guide to Anticipated Vacancies for Need Based Families (GUIDE). [3] |
| T1 | C | Resides in an apartment as part of a **special purpose program** and must leave because program is ending or because family no longer qualifies for the program. Includes tenants forced to leave MHOP program (Multifamily Home Ownership) because of a reduction in the size of the program. | *[Staff may initiate the transfer by filing a Tenant Request for Transfer even if the Request is unsigned by the tenant.]* |
| T1 | D | Living in an Extremely Underoccupied [2] apartment. | |

Page 2 of 9 Pages (Revised 1/19/07)

NEW YORK CITY HOUSING AUTHORITY
APPENDIX A
TENANT SELECTION AND ASSIGNMENT PLAN (TSAP) TRANSFER GUIDE

| PRIORITY CODE | TRANSFER TYPE | REASON FOR TRANSFER | TRANSFER OPTIONS (SEE NOTES ON PAGE 8) |
|---|---|---|---|
| T1 | E | **CATEGORY REVISED:** *Upgraded to T0-E as per amended 2006 TSAP plan.* | |
| T1 | F | Resides in a senior citizen (elderly) building/development and is no longer qualified to reside in a senior citizen (elderly) building/development. | **INTRA**-project transfer to a general population apartment within the development consolidation. If none exists, then **INTER**-project transfer out of the development consolidation, whether or not on the GUIDE. (3)<br><br>*[Staff may initiate the transfer by filing a Tenant Request for Transfer even if the Request is unsigned by the tenant.]* |
| T1 | G | **CATEGORY REVISED:** *Deleted as per amended 2006 TSAP plan. (Non-disabled residing in suitable 504 Conversion apartment)* | |
| T1 | H | Eligible for and requests an accessible apartment. | a. **INTRA**-project transfer only if proper-sized vacant accessible apartment exists.<br>b. If proper-sized accessible apartment exists but is not vacant, **INTRA** or **INTER**-project transfer from the INTERVIEWER'S GUIDE-ACCESSIBLE APARTMENTS.<br>c. If proper-sized accessible apartment does not exist, **INTER**-project transfer (coded an **INTRA**-project transfer) from the INTERVIEWER'S GUIDE-ACCESSIBLE APARTMENTS. |
| T2 | A | Living in an Underoccupied (2) apartment. | **INTRA**-project transfer or **INTER**-project transfer whether or not on the GUIDE. (3)<br><br>*[Staff may initiate the transfer by filing a Tenant Request for Transfer even if the Request is unsigned by the tenant.]* |

Page 3 of 9 Pages (Revised 1/19/07)

**NEW YORK CITY HOUSING AUTHORITY**
**APPENDIX A**
**TENANT SELECTION AND ASSIGNMENT PLAN (TSAP) TRANSFER GUIDE**

| PRIORITY CODE | TRANSFER TYPE | REASON FOR TRANSFER | TRANSFER OPTIONS (SEE NOTES ON PAGE 8) |
|---|---|---|---|
| T2 | B | Victim of Domestic Violence (VDV) | BOROUGH choice only. (NYCHA will place family at a location that is **NOT** near their current residence.) Staten Island residents may **not** choose Staten Island. |
| T2 | C | Intimidated Victim (IV)/Intimidated Witness (IW)/Child Sexual Victim (CSV) | |
| T2 | D | Rent Hardship (applies only to developments with income restrictions, e.g., Fredrick E. Samuel, Forest Hills Co-op). | BOROUGH choice only. *[Staff may initiate the transfer by filing a Tenant Request for Transfer even if the Request is unsigned by the tenant.]* |
| T2 | E | Choosing to leave an apartment which is part of a **special purpose program.** | |
| T2 | F | Leaving **FHA** due to House Repair/Utility Hardship. | BOROUGH choice only. |
| T2 | G | Victim of traumatic incident in their development. (Transfer request must be submitted no later than one year after the date of the traumatic incident.) | |
| T2 | H | Resides in an apartment in which a family member died. (Transfer request must be submitted no later than one year after the death.) | INTRA-project transfer or INTER-project transfer. If INTER-project transfer, then BOROUGH choice only. |
| T2 | I | Referred by Administration for Children's Services (ACS) for purpose of family unification. Family has child(ren) (natural or adopted) in foster care and needs larger apartment (2) before child will be released to family. | INTRA-project transfer only if proper-sized apartment exists. If proper-sized apartment does not exist, INTER-project transfer with GUIDE or BOROUGH choice. (1) |
| T3 | A | Living in an Extremely Overcrowded (2) apartment. | INTRA-project transfer only. If proper-sized apartment does not exist, INTER-project transfer with GUIDE or BOROUGH choice. (1) |

NEW YORK CITY HOUSING AUTHORITY
APPENDIX A
TENANT SELECTION AND ASSIGNMENT PLAN (TSAP) TRANSFER GUIDE

| PRIORITY CODE | TRANSFER TYPE | REASON FOR TRANSFER | TRANSFER OPTIONS (SEE NOTES ON PAGE 8) |
|---|---|---|---|
| T3 | B | Long-term friction between neighbors. | INTRA-project transfer only. If proper-sized apartment does not exist, or INTRA-project transfer won't resolve friction, INTER-project transfer with GUIDE or BOROUGH choice. (†) |
| T3 | C | Needs medical care limited to a specific facility not within 60 minutes travel time from current development. | Tenant has NO choice. NYCHA will assign tenant to a development near the facility whether or not it appears on the GUIDE. |
| T3 | D | Needs medical care not limited to a specific facility, care not available near current development. | INTER-project transfer with GUIDE choice (near a facility offering type of care needed) or BOROUGH choice (NYCHA selects a development near a facility offering type of care needed). (†) |
| T3 | E | Seriously ill and wants to continue critical care treatment with the doctor or hospital with whom tenant has a long-term relationship. Travel is now a hardship. | Tenant has NO choice. NYCHA will assign tenant to a development near the doctor or hospital whether or not it appears on the GUIDE. |
| T3 | F | Needs continuing home health care, which NO household member can provide, and that is not available within 60 minutes travel time from the current development.<br><br>NOTE: This category does NOT refer only to the elderly who need care. | A. If a relative is willing to provide care:<br><br>1. and the relative lives in a NYCHA development, NYCHA will assign the tenant to the relative's development, whether or not it appears on the GUIDE.<br><br>2. and the relative does not live in NYCHA development, NYCHA will assign the tenant to a development near the relative, whether or not it appears on the GUIDE.<br><br>B. If a non-relative is willing to provide care, INTER-project transfer with GUIDE choice (near a care provider) or BOROUGH choice (NYCHA selects a development near a care provider) (†). |

Page 5 of 9 Pages (Revised 1/19/07)

**NEW YORK CITY HOUSING AUTHORITY**
**APPENDIX A**
**TENANT SELECTION AND ASSIGNMENT PLAN (TSAP) TRANSFER GUIDE**

| PRIORITY CODE | TRANSFER TYPE | REASON FOR TRANSFER | TRANSFER OPTIONS (SEE NOTES ON PAGE 8) |
|---|---|---|---|
| T3 | G | Needs continuing childcare to enable household member to **work**, which **NO** household member can provide, and that is not available within 60 minutes travel time from the current development. | A. If a relative is **willing** to provide childcare:<br>1. and the relative lives in NYCHA development, **NYCHA** will assign tenant to the relative's development whether or not it appears on the **GUIDE**.<br>2. and the relative does not live in **NYCHA** development, **NYCHA** will assign tenant to a development near the relative whether or not it appears on the **GUIDE**.<br>B. If a non-relative is willing to provide childcare, **INTER-**project transfer with **GUIDE** choice (near a care provider) **or BOROUGH** choice (NYCHA selects a development near a care provider) [1]. |
| T3 | H | Willing to provide continuing home health care to a relative in a different development, **or** child care to enable a relative in a different development to **work**, which **NO** member of the relative's household can provide, and that is not available within 60 minutes travel time from the relative's development. | Tenant has **NO** choice.<br>**NYCHA** will assign tenant to the relative's development whether or not it appears on the **GUIDE**. |
| T3 | I | Needs an extra bedroom to accommodate <u>large</u> medical equipment, such as a hospital bed. | **INTRA**-project transfer only.<br>If proper-sized apartment does not exist, then **INTER-**project transfer, with **GUIDE** choice or **BOROUGH** choice [1]. |
| T3 | J | Disabled in a **non-elevator** building and needs an apartment on a low floor. | **INTRA**-project transfer only to an apartment on *1st or 2nd floor only in a non-elevator building*, or to any floor of a building with an elevator. If proper-sized apartment does not exist, then<br>**INTER**-project transfer, with **GUIDE** choice or **BOROUGH** choice [1]. |

Page 6 of 9 Pages (Revised 1/19/07)

**NEW YORK CITY HOUSING AUTHORITY**
**APPENDIX A**
**TENANT SELECTION AND ASSIGNMENT PLAN (TSAP) TRANSFER GUIDE**

| PRIORITY CODE | TRANSFER TYPE | REASON FOR TRANSFER | TRANSFER OPTIONS (SEE NOTES ON PAGE 8) |
|---|---|---|---|
| T4 | A | Living in an Overcrowded [2] apartment. | INTRA-project transfer only. If proper-sized apartment does not exist, then INTER-project transfer, with GUIDE choice or BOROUGH choice [1] |
| T4 | B | Required to travel to work more than 90 minutes due to a change in work location. | INTER-project transfer only consistent with job location, with GUIDE choice or BOROUGH choice [1]. |
| T4 | C | Eligible for residence in a senior citizen (elderly) development and wishes to move from general population development/building to a senior citizen (elderly) development/building. | INTER-project transfer with GUIDE choice to a senior citizen (elderly) building. |
| T4 | D | Living in a senior citizen (elderly) development/building and wishes to move to a general population development/building. | INTER-project transfer with GUIDE choice (to a general population development) or BOROUGH choice [1]. |

Page 7 of 9 Pages (Revised 1/19/07)

NEW YORK CITY HOUSING AUTHORITY
APPENDIX A
TENANT SELECTION AND ASSIGNMENT PLAN (TSAP) TRANSFER GUIDE

## NOTES

(1) **INTER**-project transfer
 - If tenant is eligible for a: 1-6 room apartment, tenant has **GUIDE choice**,
 - If tenant is eligible for a: 7 room or larger apartment, tenant has **BOROUGH choice only.**

(2) See attached **Occupancy Standards.**

(3) These tenants are eligible to transfer to any development, whether or not it is on the **GUIDE**, and may even choose a specific development <u>within</u> a consolidation.

**TENANT'S TRANSFER OPTIONS:**

- There is **no** minimum time for which a tenant must reside in an apartment before requesting a transfer.

<u>Intra-Project Transfers</u>

Tenants (transferees) eligible to transfer within their development (to non-accessible apartments) are entitled to only **one** apartment offer. If they refuse the apartment offer, the transfer request is deemed "DEAD" unless the tenant demonstrates that a temporary emergency prevents a move at the time of the offer.

<u>Inter-Project Transfers</u>

- Tenants (transferees) who are eligible to choose a development from the **GUIDE** or choose a Borough shall make their choice at the time they submit their transfer requests.

- Tenants (transferees) who refuse all developments then designated as anticipated vacancies on the **GUIDE**, or fail to choose a development, shall have their transfer request deemed "DEAD."

- Tenants (transferees) eligible to choose a Borough are entitled to **two** apartment offers.

- Tenants (transferees) eligible to choose a development from the **GUIDE** (non-accessible apartments) are entitled to only **one** apartment offer. If they refuse the apartment, the transfer request is deemed "DEAD"

<u>Transfer Requests to Accessible Apartments</u>  (Intra or Inter-Project Transfers)

- Tenants (transferees) eligible to choose an accessible apartment -- either intra-project or inter-project transfers -- are entitled to **two** apartment offers.

Page 8 of 9 Pages (Revised 1/19/07)

NEW YORK CITY HOUSING AUTHORITY
APPENDIX A
TENANT SELECTION AND ASSIGNMENT PLAN (TSAP) TRANSFER GUIDE

## NOTES (continued)

Intra or Inter-project Transfers

- Tenants whose previous transfer request was deemed "DEAD" will not be considered for a new transfer request within one year of the date of the "DEAD" status, unless a new transfer request falls within Priority Code **T0**, **T1** or **T2** and states a different need for a transfer than the prior request.

**CHANGE OF TENANT'S TRANSFER OPTIONS:**

Once a tenant's transfer choice has been certified to a project's waiting list, the tenant may **NOT** change his/her project choice unless:

- There are *changed circumstances* requiring a location change, or

- The tenant's name has been on the project waiting list for more than **two** years without an apartment offer, and the new project choice is consistent with the reason for the transfer.

## APPENDIX B - NYCHA OCCUPANCY STANDARDS FOR FAMILIES
### STANDARD OCCUPANCY / OVERCROWDED & EXTREMELY OVERCROWDED / UNDEROCCUPIED & EXTREMELY UNDEROCCUPIED

| NUMBER OF ROOMS | NUMBER OF BEDROOMS | STANDARD OCCUPANCY (NUMBER OF PEOPLE) | OVERCROWDED (NUMBER OF PEOPLE) | EXTREMELY OVERCROWDED (NUMBER OF PEOPLE) | UNDEROCCUPIED (NUMBER OF PEOPLE) | EXTREMELY UNDEROCCUPIED (NUMBER OF PEOPLE) |
|---|---|---|---|---|---|---|
| 2 | 0 | 1 $^*$ | 2 $^1$ | 2 $^2$, 3 or more | — | — |
| 3 | 1 | 2 $^1$ | 2 $^2$, 3 or 4 | 4X, 5 or more | 1, 2 $^1$ | — |
| 4 | 2 | 2 $^2$, 3, 4 | 4X, 5 or 6 | 7 or more | 2 $^2$, 3 or fewer | 1, 2 $^1$ |
| 5 | 3 | 4X, 5 | 6, 7 or 8 | 9 or more | 4X, 5 | 4 or fewer |
| 6 | 4 | 6, 7 or 8 | 9 or 10 | 11 or more | 8 | 7 or fewer |
| 7 | 5 | 9 or 10 | 11 or 12 | 13 or more | 9 or 10 | 8 or fewer |
| 8 | 6 | 11 or 12 | 13 or 14 | 15 or more | 11 or 12 | 10 or fewer |
| 9 | 7 | 13 or 14 | 15 or 16 | 17 or more | 13 or 14 | 12 or fewer |
| 10 | 8 | 15 or 16 | 17 or 18 | 19 or more | 15 or 16 | 14 or fewer |
| 11 | 9 | 17 or 18 | 19 or 20 | 21 or more | | |

**1 $^1$** **NOTES:** Pursuant to DHA 2005/9 - November 2, 2005 and Aim 56 - March 22, 2006:

1 person elderly family who is selecting a senior development may select either a studio or 1 bedroom apartment.

1 person elderly family who is selecting a general population development can select only a studio apartment.

1 person non-elderly family who is selecting a development in the borough of Staten Island may select either a studio or one bedroom apartment.

1 person family who is selecting from the Guide to Vacancies – Accessible Apartments may select either a studio or one bedroom apartment.

1 person tenant families currently residing in a studio apartment will not be offered a one-bedroom apartment except where the transfer request is for a senior development, Staten Island development, or an accessible apartment.

**2 $^1$** Married couple, two persons registered as domestic partners or a single adult with a child less than six (6) years of age.

**2 $^2$** Two adults who are neither married nor registered as domestic partners, or a single adult with a child of six (6) years of age or more.

**4X** **GENDER-IMBALANCED FAMILY:**

   a.  Married couple or couple registered as domestic partners, with other family members being one male and one female who are neither married nor registered as domestic partners.

   b.  Three females, one male (e.g., mother, 2 daughters, 1 son; father with 3 daughters).

   c.  Three males, one female (e.g., mother with 3 sons; father, 2 sons, 1 daughter).

Revised 9/11/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JULIA BETANCES,

                                        Civ. No. 08-4794 (RMB)

        Plaintiff,


    -against-


THE NEW YORK CITY HOUSING AUTHORITY,
and TINO HERNANDEZ, as Chairman of
the New York City Housing Authority,


        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


---

## DECLARATION OF DONNA M. MURPHY
## IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR A PRELIMINARY INJUNCTION

---


**RICARDO ELIAS MORALES**
**General Counsel**
**New York City Housing Authority**
**Donna M. Murphy, Of Counsel**
**Attorney for Defendants**
**250 Broadway, 9th Floor**
**New York, New York 10007**
**(212) 776-5244**