UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JULIA BETANCES,

                Plaintiff,                08-cv-4794 (RMB)

    -against-

THE NEW YORK CITY
HOUSING AUTHORITY,
and TINO HERNANDEZ, as Chairman
of the New York City Housing Authority,

                Defendants.

------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**


The Legal Aid Society
111 Livingston Street, 7th Floor
Brooklyn, NY 11201
(718) 422-2740 (John Paul Newton)
(718) 722-3093

## PRELIMINARY STATEMENT

Plaintiff Julia Betances lives with her disabled eleven-year-old child in a fourth-floor apartment without an elevator in defendant NYCHA's Armstrong Houses. Prior to her "temporary" relocation to the fourth floor, Ms Betances resided in an accessible, first floor apartment (unit "1A") at Armstrong Houses for around one decade. NYCHA moved Ms Betances from this first floor apartment in or around March 2008 to a fourth floor walk-up after NYCHA failed over a period of months and months to complete repairs in the first floor apartment.[1] Ms Betances seeks a temporary restraining order and preliminary injunction ordering NYCHA to hold an accessible, two-bedroom apartment at NYCHA's Bracetti Plaza, for which Ms Betances had been approved a transfer. Ms Betances asks for a reasonable accommodation of NYCHA's policy of flatly refusing transfers of tenants who have current nonpayment proceedings pending against them and is ultimately seeking a transfer of her and her disabled son to Apartment 6C at 290 East 4th Street in New York, New York ("Bracetti Plaza" or "6C"). This Court asked the parties to provide written memoranda and other supporting documents on the issue of granting the temporary restraining order.

---

[1] Indeed, as Ms Betances's Declaration alleges, NYCHA has failed to complete, and possibly even to begin, repairs in the first floor apartment at Armstrong Houses. (Betances Decl. ¶5, Exh. A).

## STATEMENT OF FACTS

Ms Betances respectfully refers this Court to Plaintiff's Memorandum in Support of a Temporary Restraining Order and Preliminary Injunction for a full recitation of the facts in this case. Plaintiff will provide a limited retelling of the facts here for the Court's convenience, with an emphasis on clarifying salient, possibly disputed, facts.

### Plaintiff Is A Long-Time Tenant of NYCHA, and Defendants Are Well-Aware of Her Family's Issues

Ms Betances is a resident of Armstrong Houses, a public housing development, administered by the New York City Housing Authority (hereinafter "NYCHA"). Her current address is 441 Gates Avenue, #4C, Armstrong Houses, Brooklyn, New York ("4C"). Unit 4C at Armstrong houses is on the fourth floor of a walk-up building. She was moved by NYCHA in March 2008.  Prior to that, she lived at 449 Gates Avenue, #1A, Armstrong Houses, Brooklyn, New York ("1A"), which is on the first floor and is accessible to someone with motor disabilities. Michael Robinson ("Mr. Robinson") is a Housing Assistant at Armstrong Houses. Mr. Robinson does not speak Spanish. (Betances Decl. ¶5, Exh. A). Ms Betances only speaks Spanish. Mr. Robinson is aware that Ms Betances does not speak English. (Defs.' Memorandum of Law in Opposition, at p. 6).

Ms Betances currently resides with her niece's son Algenis, of whom Ms Betances has legal custody.  As Ms Betances has reared Algenis practically from birth, she considers him to be her son. Algenis has lived at Armstrong Houses for around one decade in plain view of NYCHA staff and management. As a part of her annual recertification procedure at NYCHA, Ms Betances provides, inter alia, the amounts and sources of income for members of the household. As such,

3

Ms Betances provides documentation of her son's SSI income, of which NYCHA admits receipt (Newton Decl. ¶5, Exh. B).

**Ms Betances Does Not Speak English And Did Not**

**Inform NYCHA That She Does Not Require An Accessible Unit**

As previously discussed, NYCHA moved Ms Betances from her 1A unit because that apartment had such deplorable conditions that NYCHA determined it should move the family. To this end, Mr. Robinson took Ms Betances to unit 4C and showed this apartment to her. Ms Betances was unable to communicate to Mr. Robinson, as she does not speak English and he does not speak Spanish. Thus, any assertion that Ms Betances told Mr. Robinson that she did not require a reasonable accommodation for her disabled son is spurious. She was unable to tell Mr. Robinson anything of substance, because she could not speak English to him.

**NYCHA Is Delaying the Nonpayment Case in Housing Court**

NYCHA is delaying the nonpayment proceeding in Civil Court. On the last return date in Housing Court, which was June 2, 2008, the parties were sent to a trial-ready part and ended up before the Honorable John S. Lansden. Even though Ms Betances has waived her prima facie case and the only issue that remains is to determine what abatement Ms Betances should receive for her warranty of habitability defense, NYCHA requested an adjournment of the proceedings. Ms Betances wanted to proceed with the trial and resolve her nonpayment case, but Judge Lansden granted NYCHA's request for an adjournment. Judge Lansden told the parties that he would dismiss this case if the parties did not "agree" to an adjournment. Forced with a choice between having the case thrown out and starting from the beginning or adjourning the case, the

parties agreed to an adjournment. Now the next time the case will appear in Civil Court is June 19, 2008.

**NYCHA Has Not Been Charging Ms Betances**

**the Correct Amount of Monthly Rent**

Lastly, Ms Betances's share of the monthly rent has now been adjusted. Even though NYCHA refused to address meaningfully Ms Betances's allegation that her rent was set incorrectly during negotiations (Newton Decl. ¶6, Exh. B), Ms Betances was able to adjust her rent on or around June 5, 2008. NYCHA granted Ms Betances a hardship exemption and reduced her monthly rent by $311 to $453 both retroactively to March 1, 2008, and prospectively. Thus, NYCHA has implicitly admitted that it has not been charging Ms Betances a rent that she can afford, further clouding NYCHA's policy of flatly refusing to transfer tenants who have pending nonpayment proceedings. Ms Betances contends that NYCHA should have reduced her rent for months prior to March 2008 as well. (Betances Decl. ¶8, Exh. A).

**ARGUMENTS**

## I. THE FAIR HOUSING ACT DOES NOT REQUIRE DEMONSTRATION OF IRREPARABLE INJURY FOR INJUNCTIVE RELIEF

In their opposition papers, the defendants focus on the allegation that plaintiff will not be able to demonstrate irreparable injury as a necessary element for granting an injunction. Even assuming arguendo that plaintiff cannot demonstrate irreparable harm, the Fair Housing Act does not require a demonstration of this element for a court to issue either a temporary restraining order or a preliminary injunction. See Sunrise Development, Inc. v. Town of Huntington, 62 F. Supp.2d 762, 772 (E.D.N.Y. 1999); Cousins v. Bray, 297 F. Supp.2d 1027, 1041 (S.D. Ohio, 2003). As one of the causes of action under which plaintiff seeks her injunctive relief is the Fair Housing Act, plaintiff need not prove irreparable harm.

Nevertheless, plaintiff can demonstrate irreparable harm. Ms Betances's injury is actual and imminent, as Defendants have shown her an accessible, available apartment, but assert that this very apartment will be given to another tenant on NYCHA's waiting list. Defendants need only provide a reasonable accommodation in its policies and permit Ms Betances and her disabled son to move to the available apartment at Bracetti Plaza, but the defendants refuse to provide plaintiff with a permanent, accessible apartment.

## II. PLAINTIFF'S PROPOSED REASONABLE ACCOMMODATION IS NEITHER FINANCIALLY NOR ADMINISTRATIVELY BURDENSOME FOR DEFENDANTS

Generally, an accommodation is reasonable under the FHAA "when it imposes no 'fundamental alteration in the nature of the program' or 'undue financial or administrative burdens.' " Giebeler v. M&B Associates, 343 F.3d 1143, 1157 (9th Cir. 2003) (citing Southeastern Community College v. Davis, 442 U.S. 397, 410, 412, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)); see also PGA Tour, Inc. v. Martin, 532 U.S. 661, 689, 121 S.Ct. 1879, 149 L.Ed.2d

904 (2001) (holding, in an ADA reasonable accommodation case, that where a rule is peripheral

to the nature of defendants' activities, "it may be waived in individual cases without working a

fundamental alteration"). Here, NYCHA has made no argument whatsoever regarding financial

or administrative burdens, and the requested reasonable accommodation pertaining only to

plaintiff does not alter fundamentally the nature of the program.

Defendants appear to be ignoring completely the underlying relief sought in this

proceeding: a reasonable accommodation. NYCHA is relying upon a policy that refuses transfers

of tenants who have current nonpayment proceedings pending against them. Plaintiff seeks a

reasonable accommodation of NYCHA's policy and asks that she be transferred to the accessible

apartment available at Bracetti Plaza. NYCHA refuses to do so. Thus far, NYCHA has only

selectively applied its policy of refusing transfers, as NYCHA has already moved plaintiff and

would like to move plaintiff at least one more time. Furthermore, NYCHA has caused

unnecessary delays in resolving the nonpayment proceeding.

## A.    Defendants have already ignored NYCHA's policy of refusing to transfer tenants who have nonpayment proceedings pending

Put simply, plaintiff is seeking an accommodation of NYCHA's policy that it will not

move tenants who have a current nonpayment proceeding.  "[T]he obligation to 'accommodate' a

disability can include the obligation to alter policies that can be barriers to non-disabled persons

as well." Giebeler, 343 F.3d at 1151.  Plaintiff is seeking this accommodation because her

disabled son cannot ambulate without great difficulty up to the fourth-floor apartment to which

the Betances family has been temporarily relocated while NYCHA completes the repairs in unit

1A.  To make out a claim of discrimination based on a failure to accommodate, a plaintiff must

demonstrate that: (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew

or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. Bentley v. Peace and Quiet Realty 2 LLC, 367 F.Supp.2d 341, 345 (E.D.N.Y. 2005) (internal quotation marks and citation omitted).

In the Supreme Court's decision in US Airways, Inc. v. Barnett, 535 U.S. 391 (2002), a disabled employee requested an exception to the company's disability-neutral seniority system so that he could remain in a less physically demanding position, even though other employees intended to invoke their seniority rights to transfer to his particular position. Barnett, 535 U.S. at 393-94. The airline argued that a preferential exception to a disability-neutral policy was outside the scope of the ADA's 'reasonable accommodations' requirement. Id. at 397. Rejecting the airline's argument, the Supreme Court held that "[t]he simple fact that an accommodation would provide a 'preference' -- in the sense that it would permit the worker with a disability to violate a rule that others must obey-cannot, in and of itself, automatically show that the accommodation is not 'reasonable'." Id. at 398. the Supreme Court recognized that (1) accommodations are not limited to the immediate manifestations of a disability, but may also address the practical needs caused by a disability and (2) preferences may be necessary for the disabled who are otherwise similarly situated to non-disabled individuals.  Id.[2]

However, NYCHA appears only to enforce selectively its policy of not allowing transfers for tenants with nonpayment proceedings. NYCHA moved plaintiff in March 2008, while plaintiff was already in Housing Court. Now defendants appear to be offering to move plaintiff

---

[2] Although Barnett involves a claim under the American with Disabilities Act (ADA), courts often look to the ADA for guidance on the reach of the reasonable accommodation requirements of the FHAA. See Bentley, 367 F.Supp.2d at 348 (citing Giebeler v. M&B Assocs., 343 F.3d 1143, 1149 (9th Cir.2003) (collecting cases).

again to another temporary apartment despite the fact that plaintiff is currently in Housing Court. Thus, NYCHA has already abrogated its stated policy of refusing transfers in plaintiff's situation even though it has already moved plaintiff once and is offering to move plaintiff again. It taxes the imagination to understand why NYCHA refuses to accommodate plaintiff's request to move her to a permanent, accessible apartment at Bracetti Plaza but has, will, or would move plaintiff to two or three other apartments with NYCHA footing the bill for the moving costs and administrative costs each time.

**B.     Defendants' proposal, along with defendants' needless delays, are financially and administratively more burdensome than plaintiff's proposal**

Having already moved plaintiff one time because of deplorable conditions in unit 1A, NYCHA is now willing to spend additional monies to move plaintiff again within Armstrong Houses. Once plaintiff prevails in the underlying nonpayment action in Housing Court, defendants will again pay for plaintiff's move to another apartment. Indeed, it could even be that NYCHA eventually completes the repairs in unit 1A and moves plaintiff back to this apartment while she waits for an appropriately-sized apartment to open up near her son's medical providers in Manhattan. In other words, defendants' offer costs them more in time and in money than plaintiff's reasonable accommodation to move her immediately to Bracetti Plaza.

Moreover, defendants have caused unnecessary delays in these proceedings, further adding to their financial and administrative burden. Even though plaintiff has waived her prima facie case in Housing Court and even though both sides knew that the nonpayment case would go to a trial-ready part on the return date of June 2, 2008, NYCHA was unprepared to go forward with the trial on that date and adjourned the case until June 19, 2008. Plaintiff has tried to work expeditiously towards a resolution of any arrears owed, but NYCHA has been unwilling or unable to reciprocate. Furthermore, plaintiff and her counsel attempted to resolve the issue of adjusting Ms Betances's monthly rent at Armstrong Houses on several occasions, but NYCHA representatives and counsel were unwilling or unable to provide any real resolution. (Newton Decl. ¶6, Exh. B). Only on June 5, 2008, after receiving permission from NYCHA's counsel, were the parties able to resolve the issue of how much monthly rent Ms Betances should be charged currently.

Despite the months and months and months that have elapsed since NYCHA began repairs on unit 1A at Armstrong Houses, NYCHA has still not completed the work. It is unclear what has caused the months-long delay. If NYCHA had made the repairs at unit 1A in a timely manner, then this entire proceeding would likely have been moot. Plaintiff would have waited for her transfer to an appropriately-sized apartment from her accessible apartment (unit "1A"), and she would not be before this Court at this juncture.

NYCHA has already ignored its policy and has moved plaintiff once and, indeed, proposes moving her at least one more time instead of moving her permanently to Bracetti Plaza. Furthermore, NYCHA's policy that it refuses transfers to tenants who are in arrears would seem to presume that tenants are being charged the appropriate amount of rent, but plaintiff has been charged the incorrect amount of rent – an amount of rent that she could not afford – for the past several months. Perhaps plaintiff would not have needed to seek the remedy of a temporary restraining order and a preliminary injunction in this Court if NYCHA had been able to calculate how much rent Ms Betances should have been paying in the first place. In any event, plaintiff's proposed reasonable accommodation is the least financially and administratively burdensome proposal on the table, and one that defendants have not addressed fully.

## III. CONCLUSION

For the reasons set forth above, Ms. Betances respectfully requests that the Court issue a temporary restraining order and preliminary injunction

Dated: June 9, 2008
Brooklyn, NY

THE LEGAL AID SOCIETY


By: _____

JOHN PAUL NEWTON (JP 1976)
LINDA HOLMES
Of Counsel to Steve Banks, Attorney-in-Chief
The Legal Aid Society
Brooklyn Neighborhood Office
Emily Ruben, Attorney-in-Charge
111 Livingston Street, 7th floor
Brooklyn, New York 11201
(718) 422-2740 (John Paul Newton)

(718) 422-2759 (Linda Holmes)

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
JULIA BETANCES,

                Plaintiff,                08-cv-4794 (RMB)

    -against-

THE NEW YORK CITY                REPLY DECLARATION OF JULIA
HOUSING AUTHORITY,             BETANCES IN FURTHER SUPPORT OF
and TINO HERNANDEZ, as Chairman     PLAINTIFF'S ORDER TO SHOW CAUSE
of the New York City Housing Authority,    FOR TEMPORARY RESTRAINING
                            ORDER AND PRELIMINARY
           Defendants.          INJUCTION

----------------------------------------------------X

    I, Julia Betances, a resident of Kings County, hereby declare pursuant to 28 U.S.C. §

1746 as follows:

1. I am a resident of Armstrong Houses, a public housing development, administered by The

    New York City Housing Authority (hereinafter "NYCHA").

2. I am writing this reply declaration in further support of my request for a temporary

    restraining order and preliminary injunction seeking to stay NYCHA from renting to another

    tenant the available handicap-accessible apartment that has been shown to me at Bracetti

    Plaza as I currently live in a handicap inaccessible apartment in Armstrong Houses.

3. I write specifically to address a few points raised by defendants' declarations.

4. The defendants claim that I selected Lower East Side II as my choice even though NYCHA

    states that there were no anticipated vacancies. Robinson Decl., ¶ 6. Actually, as their

    Exhibit D makes clear, Lower East Side did have an "A," indicating that there was a vacancy

    anticipated.

5. NYCHA claims that prior to moving to my current fourth floor apartment, I indicated to Mr. Robinson that it was acceptable to me and that I did not advise anyone of the need for a reasonable accommodation. Robinsons Decl., ¶ 7, 8. First of all, Mr. Robinson does not speak Spanish, so it is impossible that I communicated anything to him as I only speak Spanish. Second, the management of the development knows quite well that my child is disabled as they see him all the time, including most of my visits to the management office, and they know that he receives SSI disability benefits. After all, my child's SSI appears on the income affidavits for my household, which I provide in my annual recertifications. Third, I moved in March 2008 because the apartment I was in was completely unsafe for my child because of the condition of the floor. I understood at the time that I was moved that this was temporary so that repairs could be made to my apartment, which I assumed would be a week or two. In fact, I have seen my old apartment and no repairs whatsoever have been made in the last four months. Had I known that we would spend several months or longer in this apartment, I would have called my daughter to come with me to translate and explain the need for a different apartment.

6. The defendants claim that I have rejected a move to an accessible apartment. That is true, only when you consider that my disabled child and I have already moved once, and we are being told that the next move would be again only temporary and we would have to move yet again. If I were offered a permanent, accessible apartment, I would immediately accept it.

7. Finally, I wanted to address the issue of the rent arrears. As can be seen from the rent breakdown attached to NYCHA's papers (as Exhibit F to Robinson Declaration), NYCHA was charging me $764 despite my repeated requests for a rent reduction.

8. On June 5, 2008, my attorney Linda Holmes and I met with NYCHA to review my request for a rent reduction. Although I was not working at all for the months of January and February 2008 (after my disability of November to December 2007), I was not able to prove that I was entitled to a reduction of rent for those months. However, NYCHA agreed that from and including March 2008, my rent should be reduced based on showing a hardship exemption because my income has been reduced. NYCHA agreed to reduce my tenant share of the rent to $453, a reduction of $311 monthly. This will reduce my arrears by $1,244.

9. One issue that the defendants failed to address whatsoever was the reason for denying my request for a reasonable accommodation to NYCHA's policy of not transferring tenants with arrears given my child's disability.

10. Defendants already agreed to a transfer, which they have done by moving me to my current apartment despite my arrears. And, NYCHA has agreed to another move to yet a third, temporary apartment despite my arrears. NYCHA has given no reason that its proposal is less administratively or financially burdensome than the reasonable accommodation that I proposed. In fact, it seems to me that the defendants' proposal is not only more difficult for me and my child, but it is also more financially and administratively burdensome for them.

11. I do not know why NYCHA would agree to transfer me due to hazardous conditions despite my alleged rent arrears, but will not transfer me to provide reasonable accommodations for my disabled child citing the same rent arrears as the obstacle.

12. I am requesting a temporary restraining order and preliminary injunction to stay NYCHA from offering the accessible apartment in Bracetti Plaza to another tenant, so that my family will not lose the opportunity to move to a handicap accessible apartment.

13. There has been no prior request for the relief sought herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 9, 2008.

JULIA BETANCES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
JULIA BETANCES,

           Plaintiff,            08 Civ. 4794   (RMB)

   -against-

THE NEW YORK CITY             DECLARATION OF TRANSLATION
HOUSING AUTHORITY,
and TINO HERNANDEZ, as Chairman
of the New York City Housing Authority

           Defendants.

-----------------------------------------------------X

      I, Lauthie Reyes, an employee of The Legal Aid Society, hereby declare pursuant to 28

U.S.C. § 1746 as follows:

      1.     I am fluent in the Spanish and English languages.

      2.     I today read the attached Reply Declaration in Further Support of Order to Show

Cause for Preliminary Injunction with Temporary Restraining Order  to the plaintiff, translating

it from English to Spanish.

      3.     The plaintiff indicated that she understood the contents of the document and

signed it.


I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on June 9, 2008.

                                                Lauthie Reyes

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
JULIA BETANCES,

                    Plaintiff,                    08-cv-4794 (RMB)

    -against-

THE NEW YORK CITY                   REPLY DECLARATION OF JULIA
HOUSING AUTHORITY,             BETANCES IN FURTHER SUPPORT OF
and TINO HERNANDEZ, as Chairman    PLAINTIFF'S ORDERTO SHOW CAUSE
of the New York City Housing Authority,   FOR TEMPORARY RESTRAINING
                               ORDER AND PRELIMINARY
            Defendants.          INJUCTION

----------------------------------------------------X

     I, John Paul Newton, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1.  I am of counsel to Steven Banks, Attorney-in-Chief of the Legal Aid Society, attorneys for

    Plaintiff Julia Betances. As such, I am familiar with the facts and circumstances of this

    proceeding. As to those matters with which I am not personally familiar, I believe them to be

    true based on information and belief. I am admitted to practice before the United States

    District Court for the Southern District of New York.

2.  I am writing this reply declaration in further support of plaintiff's request for a temporary

    restraining order and preliminary injunction seeking to stay NYCHA from renting to another

    tenant the available handicap-accessible apartment that has been shown to Ms Betances at

    Bracetti Plaza.

3.  I write specifically to address a few points raised by defendants' declarations.

4.  Donna Murphy, counsel for Defendants in this proceeding, met with my co-counsel, Linda

    Holmes, and me at our first conference before this Court.

5. During the course of our discussion, Ms Murphy acknowledged that NYCHA had notice and knowledge that Ms Betances's son, Algenis, receives SSI. Ms Betances properly reports her income, including her son's SSI, to NYCHA as a part of her annual recertification.

6. Noting that NYCHA had made an error in computing Ms Betances's rent, Ms Holmes and I asked Ms Murphy to review our client's request to lower her share of her monthly rent. Ms Murphy briefly reviewed the documentation in NYCHA's file and came back to us to tell us that NYCHA had performed the calculation correctly. Ms Holmes asked upon what documentation NYCHA relied in making this determination, and it turned out that the file Ms Murphy had lacked the documentation our client had provided NYCHA within the past three or so weeks. Ms Murphy refused to accommodate our request to review this information again and bring all the parties into the conference room to ascertain what our client's appropriate monthly share of rent should be.

7. There has been no prior request for the relief sought herein.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 9, 2008.


JOHN PAUL NEWTON (JP 1976)